(39 Misc. Rep. 147.)

### GILLESPIE v. McDONOUGH, Secretary of State.

(Supreme Court, Special Term, New York County. October, 1902.)

**1. ELECTIONS—NOMINATIONS—CANDIDATE OF ANOTHER PARTY.**

Laws 1896, § 56, authorizes the convention of a political party to appoint committees to nominate candidates. Section 66 provides that when no nomination shall have been originally made by a political party, or a vacancy exists, a committee of such party cannot nominate a candidate of another party for such office; it being the intent of the act that, when a candidate of one party is placed on the ticket of another party, such nomination must be made in the manner provided for making original nominations by such party. *Held*, that where a convention of the Prohibition party appointed a committee to fill vacancies on the state ticket, and thereafter the Democratic state convention nominated a certain person for attorney general, and on the following day the committee of the Prohibition party met, and thereafter executed a certificate of nomination of the same person for attorney general, the secretary of state could not lawfully refuse to file, as invalid, such certificate.

**2. SAME—REVIEW—JURISDICTION.**

Laws 1896, c. 909, § 56, providing that the supreme court, or a justice thereof, within the judicial district, shall have jurisdiction, on complaint of any citizen, to review the acts of the secretary of state in the matter of filing certificates of nomination, authorizes the review in the judicial district in which the citizen resides, and not necessarily in the district in which the secretary of state resides.

Application of James F. Gillespie for an order directing the secretary of state to place the name of John Cunneen on the ticket of the Prohibition party as a candidate for the office of attorney general; he having been selected for that purpose by a committee appointed by the convention of such party to fill vacancies.

Edward B. Whitney and Coleridge A. Hart, for application.
C. C. Van Kirk and Job E. Hedges, opposed.

BISCHOFF, J. The questions involved in this application are two; the first relating to the jurisdiction of the court in this judicial

district to entertain the application, the second affecting the merits, and both, in their solution, resting upon the proper construction to be given to sections of the election law of the state (Laws 1896, c. 909). The Prohibition party nominated, in state convention, all candidates for office except for attorney general. Under section 56 of the election law, the same convention appointed two committees; the first to nominate a candidate for attorney general; the second for the purposes enumerated under that section. No question is raised upon this application as to the regularity of the convention, or the powers delegated to the committee appointed by it to carry out its duties as prescribed by law; nor is any objection raised to the formal execution of the papers by this committee in the course of its duty. The Democratic convention on October 1st nominated John Cunneen for attorney general, and on October 2d the committee of the Prohibition party nominated the same candidate for that office. The proper certificate (Election Law, § 56) was executed by this committee on October 3d, the same day on which the Democratic nomination of the same nominee was filed with the secretary of state, and on the following day the Prohibition nomination was also filed with the secretary of state. Aside from the question of jurisdiction, the main matter presented and urged against the Prohibition nomination filed with the secretary of state was sustained, and upon the ground that as, at the time the Prohibition nomination was filed, Mr. Cunneen was the candidate of the Democratic party, he could not, under the election law, become as nominated the candidate of the Prohibition party.

The question of jurisdiction, raised as a preliminary objection, should be considered first. This relates to the proper construction to be placed upon these provisions, under section 56 of the election law:

"Any questions arising with reference to any device, or to the political party or other name designated in any certificate of nomination filed pursuant to the provisions of this section, or of section fifty-seven of this article, or with reference to the construction, validity or legality of any such certificate, shall be determined in the first instance by the officer with whom such certificate of nomination is filed. Such decision shall be in writing, and a copy thereof shall be sent forthwith by mail by such officer to the committee, if any, named upon the face of such certificate, and also to each candidate nominated by any certificate of nomination affected by such decision. The supreme court, or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction, upon complaint of any citizen, to review the determination and acts of such officer, and to make such order in the premises as justice may require, but the final order must be made on or before the last day fixed for filing certificates of nomination to fill vacancies with such officer as provided in subdivision one of section sixty-six of this article. Such a complaint shall be heard upon such notice to such officer as the said court or justice or judge thereof shall direct."

It is contended that under these provisions this court, within the First judicial district, has not jurisdiction to entertain the application, but that, as the secretary of state is within the Third judicial district, relief should have been sought of the supreme court, or any justice thereof, within the Third judicial district, or of the county judge

of Albany county. That the right to apply for relief by applicants is not so limited seems well established by authority (In re Fairchild, 151 N. Y. 361, 45 N. E. 943), as well as by principle. The case cited clearly holds, applied to the case at bar, that the application need not have been made, necessarily, in the Third judicial district, though without deciding authoritatively where else relief could be sought. ·The moving papers show that complainant, Gillespie, is a citizen of the state, and resides in the borough of Manhattan, in the county of New York. Thus is presented the question of where the decision of the secretary of state must be reviewed on the application of a resident of New York county. The Fairchild Case, as suggested, holds that it need not be in the Third judicial district; and it would seem to me, under the language of section 56 of the election law, above recited, that this court in New York county has jurisdiction of the subject-matter. The review contemplated by the provision under the election law is in the nature of an appeal from a quasi judicial determination of the secretary of state in passing upon the validity or legality of the certificate offered, and the true interpretation of the language of the act, in my judgment, cannot be deemed to give the exclusive right of review of the acts of the secretary of state on filing all certificates of candidates for state office to the supreme court, or judge thereof, of the Third judicial district, or the county judge of Albany county. The true import of the language seems to be that upon the complaint of any citizen the supreme court, or any justice thereof, within the judicial district, i. e., of the citizen, or any county judge within his county, shall have summary jurisdiction. This in no way does violence to the language, effects a convenient remedy for review, and is consistent with well-known conditions, rendering a speedy determ⸗·-ation of such questions of the utmost importance. The argument that such construction would necessitate the secretary of state appearing in widely different parts of the state to protect his interests on various nominations sought to be reviewed can have but little weight, in view of the well-known fact that the secretary of state takes but little, if any, active part in these controversies. As in the case at bar the real controversy is usually waged by contending political parties, though nominally the review may be sought, as the statute requires, in the name of an individual, and the real relation of the secretary of state is analogous to a court of first instance, and his attitude may well remain in most instances wholly passive. The legislature could scarcely be considered as acting without knowledge of these conditions, and should not be held to have granted the exclusive right of review of nominations for state offices to any particular judicial district court or judge, without the clearest expression of such intention in the language used; and certainly the true construction of section 56 of the election law will fairly bear no such interpretation, though concededly ambiguous in its terms.

The question affecting the merits of the application involves the construction of the following part of section 66 of the election law:

"When no nomination shall have been originally made by a political party, or by an independent body for an office, or where a vacancy shall

exist, it shall not be lawful for any committee of such party or independent body authorized to make nominations, or to fill vacancies, to nominate or substitute the name of a candidate of another party or independent body for such office; it being the intention of this act that when a candidate of one party is nominated and placed on the ticket of another party or independent body, such nomination must be made at the time and in the manner provided for making original nominations by such party, or independent body."

The secretary of state ruled that, because at the time when the certificate was filed on behalf of the candidate for attorney general by the Prohibition party Mr. Cunneen was already the candidate of the Democratic party, he could not be nominated by such Prohibition committee. The controversy turns on the language used in section 66 of the election law:

"When no nomination shall have been originally made by a political party, or by an independent body, for an office, or where vacancies shall exist."

As I understand it, the reason for the conclusion reached by the secretary of state was, in substance, that the language intended by "original nominations" means only those made by a convention of a political party, as distinguished from those made by a committee appointed by a convention. It does not appear that the legislature has in any way defined the phrase "originally made by a political party," in express terms, nor does it appear in the context that any intention is shown to distinguish between nominations made by conventions or committees of conventions as original nominations; but, on the contrary, the legislature has provided by express enactment two ways or means of making nominations,—the first by convention, and the second by a duly authorized committee of such convention. See Election Law, § 56. After so providing, the law makes no distinction as to either in respect to its being original or secondary. It treats both on an equality, and in formal matters distinguishes only so far as to make the credentials of either authoritative on their face when presented to the secretary of state:

"Sec. 56. Party nominations: * * * Party nominations of candidates for public office can only be made by a convention, or by a duly authorized committee of such convention of a political party. * * * The party certificate whereby such party nominations are certified shall contain the title of the office. * * * It shall be signed by the presiding officer and a secretary of such convention or primary, or if made by a committee by a majority of the members thereof. * * * When the nomination is made by a committee, the certificate of nomination shall also contain a copy of the resolution passed at the convention or primary which authorized such committee to make such nomination. A certificate of nomination filed pursuant to this section may upon its face appoint a committee of one or more persons for the purposes specified in section sixty-six of this act."

Thus it would appear that, to sustain the conclusion of the secretary of state, it is necessary to hold that only nominations made in convention are "originally made," and that those made by committees can never be "originally made." What the convention could do of itself, it certainly, unless restrained by positive law or the rules of its own organization, could do by its own committee appointed for that purpose, under well-known and familiar principles of agency; and to hold that because the committee acts, instead of the whole con-

vention, it is not an original nomination, necessarily assumes want
of power in the committee itself, however appointed, to make at all
an original nomination,—a conclusion which under no circumstances
should be reached without the clearest indications of legislative will.
Certainly the legislature had knowledge of the not unusual custom
of nominating by committee. It was adopted by the two great par-
ties in nominating Chief Judge Andrews in 1892, and circumstances
point to its use again in the not distant future. If the construction
given by the secretary of state be right, how would it be possible to
nominate by the two great parties by committee a candidate for any
state office? Suppose the Republicans next year should nominate a
candidate for the court of appeals by committee, as it may do, and
the Democrats sought to nominate by its committee the same can-
didate? The secretary of state, under his construction of the provi-
sion in controversy, would have to take the position that the Demo-
cratic nominating certificate must be refused on the same reasoning
that he uses in the case at bar. If he is right, then, to effect a nomi-
nation of such a candidate by the two great parties, a joint meeting
of the two committees would be necessary and simultaneous execu-
tion of credentials. The law does not contemplate absurdities. The
two methods of nomination are considered, in my judgment, of equal
dignity under the election law. Either is an original nomination.
Either must be certified by a party certificate,—in the one case by
the officers of the convention, and the other by a majority of the
committee. The legislature says:

"It being the intention of this act that when a candidate of one party is
nominated and placed on the ticket of another party, or independent body,
such nomination must be made at the time and in the manner provided for
making original nominations by such party or independent body."

The legislature saw fit to express its own meaning and intention in
terms of interpretation, and, if it had intended to mean by "original
nomination" those made in party conventions or independent body
conventions only, language clearly expressive of such meaning would
have been used; and it is very plain to be seen that the legislative in-
tent was in this respect not to distinguish between direct convention
nominations and those duly made by committee. In its use of the
phrase "original nominations" in section 66 of the election law, the
legislature clearly meant the first nominations, as distinguished from
those made to fill vacancies caused by death, resignation, or other-
wise, after the original, first, or primary nominations. This construc-
tion is justified by an examination of the duties of the secondary com-
mittee, as shown by section 66. This provides for action by the
committee in case of a declination of a nomination, death of a nomi-
nee, disqualification of a nominee, or defects in the certificate of nomi-
nation of a candidate which may be cured. To fill these vacancies
or supply these defects by substitution might well be held as within
the legislative mind, as distinguished from "original nominations."
The legislature apparently treated these nominations covered by sec-
tions 56 and 57 of the election law as "original nominations," and,
as appears by the heading of section 66, expressly provided for filling
vacancies in nominations and correcting certificates; thus showing

by separate treatment what was intended as "original nominations," and those made by committee, as in the case at bar, are within them. It thus appears that, to justify the conclusion of the secretary of state in the premises, it is necessary to interpret the clause in controversy in section 66 of the election law as if it read, "when no nominations shall have been originally made by a convention of a political party"; but I conclude that such construction is neither in harmony with sections 56, 57, and 66 of the election law, the express declaration of legislative intent in section 66, nor can it be adopted without doing violence to the plain meaning of the language employed, under proper canons of interpretation. It follows that the nomination of Mr. Cunneen by the Prohibition party, through its convention committee, was an original nomination, and that the secretary of state should treat the rejected certificate as a good and valid original nomination of that party of John Cunneen for the office of attorney general of the state, and that an order should be entered accordingly.

Ordered accordingly.