In the Matter of the Application of PATRICK E. CALLAHAN, Appellant, to Review a Determination of the Secretary of State of the State of New York.

GARRET J. GARRETSON et al., Respondents.

**Election Law — unconstitutionality of section 136 thereof.**

The provisions of section 136 of the Election Law (Cons. Laws, ch. 17), forbidding a committee of any party or independent body authorized either to make nominations or to fill vacancies to nominate a candidate of another party or independent body for the same office, are invalid and unconstitutional.

*Matter of Callahan,* 140 App. Div. 897, affirmed.

(Argued October 27, 1910; decided November 22, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 19, 1910, which affirmed an order of Special Term confirming the decision of the secretary of state in overruling objections to a certificate of nomination filed by the Independence League party and nominating Garret J. Garretson, Samuel T. Maddox and Harrington Putnam for the office of justices of the Supreme Court.

The facts, so far as material, are stated in the dissenting opinion.

*Edward M. Shepard, William N. Dykman, William F. Hagarty* and *Maurice V. Theall* for appellant. The Election Law expressly prohibits both the nomination by committee of nominees already named by another political party

and the substitution of candidates already named to fill vacancies by committee. (Cons. Laws, ch. 17, §§ 120, 121, 133, 135, 136 ; *Matter of Gillespie* v. *McDonough*, 39 Misc. Rep. 147.)

*Robert Stewart* and *Eugene L. N. Young* for respondents. The nomination in question by the committee of the judicial convention of the Independence League is an original nomination. (*Matter of Gillespie* v. *McDonough*, 39 Misc. Rep. 147.) In construing the part of the Election Law herein referred to the doctrine of practical construction should be applied, to wit: That where a course of conduct or line of action under a statute has been observed by public officers for a long period, acquiesced in by all concerned, and never questioned in the courts, a practical construction is put upon the statute which the courts will not disturb. (*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 376 ; *Matter of W. S. R. Co.*, 115 N. Y. 442.)

*Edward R. O'Malley, Attorney-General* (*Frederick C. Tanner* of counsel), for secretary of state, respondent.

Cullen, Ch. J. While I think the decision of the courts below could well be sustained on the ground of long acquiescence by the public and legislature in the interpretation of section 136 of the Election Law, declared by Mr. Justice Bischoff in *Matter of Gillespie* v. *McDonough* (39 Misc. Rep. 147), and while I agree in the opinion of my brother Gray on that question, I wish to place my vote on a broader ground. In my opinion the provisions of section 136 forbidding a committee of any party or independent body authorized either to make nominations or to fill vacancies to nominate a candidate of another party or independent body for the same office are plainly invalid and unconstitutional. I shall not discuss the extent of the power of the legislature to regulate elections other than to say that concededly the power must be so exercised as not to deny or impair the rights of the electors. I

shall assume that the legislature may prescribe in what manner and by what bodies nominations for office may be made. I will assume also that the legislature might have refused to grant committees of parties or of independent bodies the power to make nominations at all, but have required all nominations to be made by conventions. The proposition which I assert is this: That if the legislature does grant to any convention, committee or body the right to make nominations, it cannot limit the right of such convention, committee or body to nominate as its candidate any person who is qualified for the office. The electors have the right to vote for whom they will for public office, and this right cannot be denied them by any legislation. (*People ex rel. Bradley* v. *Shaw*, 133 N. Y. 493; *People ex rel. Goring* v. *President, etc., of Wappinger Falls*, 144 id. 616.) Equally, any body of the electors has the right to choose whom it will for its candidate for office and to appeal to the whole electorate for votes in his behalf. If the legislature has the constitutional power to prevent a committee of a party from nominating as its own candidate a candidate already in nomination by another party or body, it may equally, if it sees fit, forbid a convention from making such a nomination. It is true that the legislature may prescribe qualifications for office where there is no constitutional provision on the subject, but it has been settled law from the earliest period in the history of our state that it cannot enact arbitrary exclusions from office. (*Barker* v. *People*, 3 Cow. 686; *Rathbone* v. *Wirth*, 150 N. Y. 459; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103.) If it cannot enact arbitrary exclusions from office, equally it cannot enact arbitrary exclusions from candidacy for office. What exclusion could be more arbitrary than that one party or organization should not be permitted to nominate the candidate of another. For years the great popular outcry has been against the domination of partisanship in the election of administrative and judicial officers. To some extent the voters have felt the effect of the popular demand, especially this has been the case in this state in reference to the judiciary. For the past nine

years every member of this court has been elected on the
common nomination of the two great political parties. The
same was the case with the election this year, but under the
construction of the statute contended for by the appellant,
assuming its validity, the candidate of the party which made
the latest nomination was not entitled to a place on the ticket
of the other party because that party had first held its conven-
tion and intrusted the nomination to one of the vacancies to a
committee in the hope that there might be presented to the
electors two common nominees worthy of the support of all
the people and thus avoid division on partisan lines. Person-
ally, I should think it a subject for public congratulation that
a candidate was so well qualified for the office he sought as
to command the support of other political bodies. But I do
not base my argument at all on the claim that the legislation
operates against non-partisanship; that may seem to me an
objection, but to others not an objection. I insist that the
legislature has not the right to legislate so as to induce either
partisan voting or independent voting. The liberty of the
electors in the exercise of the right vested in them by the
Constitution to choose public officers on whatever principle
or dictated by whatever motive they see fit, unless those
motives contravene common morality and are, therefore,
criminal, such as bribery, violence, intimidation or fraud,
cannot be denied.

It has been suggested that committees can more readily
makes fusions and combinations than conventions. If such is
the case what power is there to forbid such fusions and combina-
tions as the electors choose to make? It has also been sug-
gested that a committee may be exposed to corrupt influences.
I do not see why corruption might not be used to prevent
the indorsement of another candidate as well as to indorse
him. But assuming the suggestion well founded, it may be
a reason for denying the power of nominating to a committee,
but the power cannot be vested in them to be exercised in
favor of one class of nominees and against another. Could a
provision be upheld that the committee should not nominate

a man worth more than a million dollars on the theory that
he would be more able to corrupt it than a poor man? The
fact is plain that the legislative provision is solely intended
to prevent political combinations and fusions, and this is the
very thing that I insist there is no right to prevent or hamper
as long as our theory of government prevails, that the source
of all power is the people, as represented by the electors.

A similar question arose in Michigan. A primary election
law in that state provided that before the name of any candi-
date should be placed upon the ballot at the primary election
such candidate should make oath that he was a candidate for
the office. This provision was held unconstitutional. The
court said: "The authority of the legislature to enact laws
for the purpose of securing purity in elections does not
include the right to impose any conditions which will destroy
or seriously impede the enjoyment of the elective franchise.
* * * We cannot escape the conclusion that the provision
in question does most seriously impede the electors in the
choice of candidates for office, and that it is in conflict with
the provisions of section 1 of article 18 of the Constitution.
* * * This provision * * * precludes the voters from
choosing as a candidate one who declines to himself seek the
office." (*Dapper* v. *Smith*, 138 Mich. 104.)

It is no answer to this position to say that the law permits
conventions to nominate the candidates of other parties, and
that, therefore, neither the right of the elector nor that of the
candidate is impaired. Legislation to be valid must not only
not deprive the elector of his right to vote for whom he will,
but for what candidate he will, and it must not discriminate
in favor of one set of candidates against another set. Would
a statute which authorized a committee to nominate as its
own candidate a candidate of either of the two great political
parties, but not a candidate of one of the smaller parties, or
authorized it to name a black-haired man, but not a red-
haired man, be valid? Yet, if the argument by which it is
sought to sustain the legislation before us is sound, it would
equally support such legislation. It could be said that no

right was impaired because conventions were at liberty to nominate red-haired men, though committees were not.

The orders of the Appellate Division and Special Term should be affirmed, with costs.

Gray, J. I think that the determination below was right and that the order appealed from should be affirmed. The courts have followed, as I understand, a decision made in 1902 by Mr. Justice Bischoff in *Matter of Gillespie* v. *McDonough*, (39 Misc. Rep. 147). There a precisely similar situation existed; the committee of the state convention of the Prohibition party nominating as their candidate for the office of attorney-general the candidate of the Democratic party for the same office. That decision has been acquiesced in for the past eight years. The legislature has, repeatedly, had under consideration amendments of the Election Law (Cons. Laws, ch. 17) and, in 1909, revised and consolidated that law; but the provisions of the section, (136), in question then and now, have not been changed. I am clear that when the committee of the Independence League party, duly authorized by resolution of its delegates, in convention assembled, "to make original nominations for justices of the Supreme Court," etc., placed in nomination the respondent, Garret J. Garretson, that was an original nomination by the party and that it was not invalidated, within the provisions of section 136 of the Election Law, because Garretson was a candidate for the same office on the ticket of the Republican party. Section 120 of the law is entitled "Party Nominations" and provides that "Party nominations of candidates for public office can only be made by a convention, or by a duly authorized committee of such convention, of a political party which at the last preceding general election, * * * at which a governor was elected, cast ten thousand votes," etc. The section contemplates that the "party nomination" may be made by the convention, or by its committee appointed for the purpose. The ordinary mind would, irresistibly, infer that the nomination by such committee would be as "original," as

though made by delegates in convention. That such was, also, the legislative understanding seems to be apparent from the language in the next section. Section 121, in providing for "Party certificates of nomination," requires that "the party certificate * * * shall contain the title of the office for which each person is nominated, and * * * shall, also, designate * * * the name of the political, party which the convention, primary or committee *making such nomination* represents. * * * *When the nomination is made by a committee,* the certificate of nomination shall contain a copy of the resolution passed at the convention," etc. The whole intendment of this section is aimed at the certificate, whereby an original nomination of a candidate is made by a political party, whether made in convention, or by the committee there selected by the delegates for the purpose. When, later, the situation is considered, which may arise from vacancies occurring, we find section 135 enacted to meet it. It is entitled "Filling vacancies in nominations." It provides that "If a nomination is duly declined, or the attempt to nominate at a primary results in a tie, or a candidate regularly nominated dies before election day, or is found to be disqualified * * * or if any certificate of nomination is found to be defective, * * *, the committee appointed on the face of such certificate of nomination * * * may make *a new nomination* to fill the vacancy so created, or may supply such defect," etc. Then section 136 follows, whose language gives rise to the question before us, which is entitled "Certificates of new nominations." It provides how "the certificate so made" shall be executed and filed, and what shall be the duty of the secretary of state upon its filing. Then, immediately, follows in the section the provision that "*When no nomination shall have been originally made* by a political party or by an independent body for an office, or when a vacancy shall exist, it shall not be lawful for any committee of such party or independent body authorized to make nominations or to fill vacancies, to nominate or substitute the name of a candidate of another party or independent body for such office ; it

being the intention of this chapter that when a candidate of one party is nominated and placed on the ticket of another party or independent body, such nomination must be made at the time and in the manner provided for making original nominations by such party or independent body." I think that this section, when read in the light of the preceding sections, should be regarded as having reference to the "new nominations" to be made, where the vacancies have occurred, which the preceding section 135 has covered in its provisions. If we take the view, which I think proper and reasonable, of section 120, that nominations of party candidates made according to its provisions are original nominations, we have no difficulty in referring the language of section 136 to, and in harmonizing it with, the provisions for making new nominations, made necessary by the happening of the events specified in section 135. The inhibition of section 136 against the selection of a candidate on another ticket for the same office would not apply to a case where the committee was acting for the convention, in making nominations for offices upon their party's ticket. In that case the intendment of section 136, that such a nomination "must be made at the time and in the manner provided for making original nominations by such party," would be satisfied. The intent of the statute may be so inartificially expressed as to give rise to debate; but, when we consider the provisions in their order and in their apparent connection with the subjects of each, we should find no difficulty in interpreting their purport in the way I have indicated. The question has been fully discussed in the opinions rendered by Justice BISCHOFF, in *Gillespie* v. *McDonough*, (*supra*), and by Justice STAPLETON in the present case, and I deem it unnecessary to speak further. I think that our affirmance should be rested upon the ground stated, as sufficient for the disposition of the appeal. As a majority of my associates, however, desire, also, to concur with the chief judge in the views expressed by him, I shall join with them in holding that the provisions of section 136 are unconstitutional and, therefore, invalid, in forbidding the committee

of a political party, authorized to make nominations, to nominate as a candidate for an office on the party ticket a person who is the candidate of another party for the same office. The power of the legislature to regulate may not, validly, be stretched so far as to restrict a body, authorized to make nominations for a political party, in its right to select any duly qualified person as a candidate for public office. It cannot deprive the electors of the right to vote for any person for a public office not disqualified under our laws.

I think the affirmance may well be placed upon the first ground discussed; but if necessary to the affirmance, I shall concur with the chief judge's opinion.

Hiscock, J. I concur for affirmance on the first ground stated by Judge Gray. The provisions of the Election Law governing the question now before us are not entirely free from ambiguity and uncertainty. I think, however, that they may fairly be construed as permitting what was done in this case, and in view of the fact that the legislature for several years has allowed such interpretation by the courts to prevail and be followed by political parties when, independent of the question of constitutionality raised by Chief Judge Cullen, it could have avoided or prevented the same by a slight amendment of the statute makes me the more ready to adopt this view.

Haight, J. (dissenting). On the 6th day of October, 1910, at a convention of delegates of the Independence League party, held in and for the second judicial district, a resolution was adopted appointing a committee to make original nominations for three justices of the Supreme Court on the Independence League ticket for that district, and subsequently on the 7th day of October, at a meeting of that committee, it placed in nomination for the offices aforesaid Garret J. Garretson, Samuel T. Maddox and Harrington Putnam, who previously, and on the 1st day of October, 1910, had been placed in nomination by the Republican party at its judicial convention held in and for that judicial district. Upon filing the

certificate of such nomination with the secretary of state by the committee of the Independence League, the appellant entered a protest with the secretary of.state, in which he claimed that such nomination made by the committee was void and in violation of the provisions of section 136 of the Election Law. The protest having been overruled by the secretary of state, these proceedings were instituted by the appellant, who was the nominee for justice of the Supreme Court in that district by the Democratic party.

The question thus presented for determination is as to whether a candidate who has been nominated by a political party for an office can be nominated by a duly authorized committee of a convention of another political party under the Election Law of our state.

Section 120 of the Election Law provides that "Party nominations of candidates for public office can only be made by a convention, or by a duly authorized committee of such convention." It thus will be observed that the convention of a party is its supreme power, and is invested with primary and original power to make nominations of candidates for an office. No committee, primarily or originally, possesses such power. It is only after the convention has duly authorized a committee to make nominations that it is vested with power to do so. Its power is, therefore, delegated and secondary to that of the convention. Section 135 contains provisions with reference to filling vacancies occurring in party nominations by the declination, death or disqualification of a person nominated, and section 136 contains provisions with reference to the making of a certificate by the committee, the signing and filing of it, and then concludes as follows: " When no nomination shall have been originally made by a political party or by an independent body for an office, or when a vacancy shall exist, it shall not be lawful for any committee of such party or independent body authorized to make nominations or to fill vacancies, to nominate or substitute the name of a candidate of another party or independent body for such office; it being the intention of this chapter that when a candidate

of one party is nominated and placed on the ticket of another party or independent body, such nomination must be made at the time and in the manner provided for making original nominations by such party or independent body."

Some confusion appears to exist with reference to the meaning of the word " originally," as appears in the first clause of the statute : " When no nomination shall have been *originally* made by a political party for an office," the contention being that " originally " refers to a nomination made either at a convention or by a committee appointed by the convention. But it appears to me that this question is answered by the statute itself, for in construing it we are bound to give force to all of its provisions, provided they can be harmonized with each other. True, the nomination by a committee is original in the sense that it is first made. But it must be remembered that the statute has invested the convention with the power to make nominations and that its power is primary and original. When the convention is called for the purpose of making nominations, its power so to do is original, and when it delegates that power to a committee, the committee's action is secondary and subject to the power of the convention. An examination of the provisions of sections 120, 121 and 135, and those under review of section 136, make it clear that the convention is empowered to appoint two committees, and only two, one to make nominations and the other to fill vacancies. If the convention itself nominates candidates for all the positions to be filled, then no committee to make nominations could be properly appointed, for there would be nothing for the committee to do ; and the only committee that would be necessary in such a case would be a committee to fill vacancies. If the word " originally," therefore, refers to nominations made in the first instance by the convention, then all of the provisions which follow become of force and effect. If, however, the word " originally " means the nomination made by a committee, then no force or effect can be given to a portion of the statute which follows : " When no nomination shall have been originally made by a political party   *   *   *

for an office, or when a vacancy shall exist." Here we have distinct reference to the two committees which the convention has been authorized to appoint in the preceding sections of the statute, to wit, a committee to make nominations, and a committee to fill vacancies. The statute then proceeds: "It shall not be lawful for *any* committee of such party * * * to make nominations or to fill vacancies" (here again we have the two functions distinctly referred to, to make nominations and to fill vacancies), "to nominate or substitute the name of a candidate of another party or independent body for such office." And then the statute concludes: "It being the intention of this chapter that when a candidate of one party is nominated and placed on the ticket of another party or independent body, such nomination must be made at the time and in the manner provided for making original nominations by such party or independent body." The time and manner provided for making original nominations, under the statute, is the convention called for that purpose. If the committee to make nominations is to be exempted from the restrictions of the statute, then all of the provisions specifically relating to its functions become meaningless and senseless. If, however, the legislature referred to a nomination by the convention, then every provision becomes clear and operative.

The committee appointed to make nominations, as well as the committee appointed to fill vacancies possess separate, independent functions; but those functions may be delegated to one committee who is empowered to make nominations as well as to fill vacancies. In such case the limitations of the statute extend to each of the functions of the committee.

The provisions of the statute under review were inserted in the Election Law in 1896, chapter 909, section 66. Its purpose was to correct an evil that had made its appearance in the nomination of candidates for office. A number of parties had come into existence in which nominations for office were made and placed upon the official ballot. Some of these parties, meeting in convention, only made nominations for one

or two positions, and then adjourned after appointing a com-
mittee to make nominations and to fill vacancies.   In some
instances rumors were circulated that positions upon such
party ballot had been improperly disposed of to candidates
upon other party ballots, so that it was not uncommon to find
the name of a candidate on three or four columns of the official
ballot.   This evil the legislature attempted to correct.   If the
statute is now to be construed as having no reference to com-
mittees appointed to make nominations, then the evil sought
to be remedied by the legislature chiefly fails.   It is true that
it is conceded that it applies to the committee authorized to
fill vacancies, but it was not in the committee that filled vacan-
cies that the evil practice referred to existed.   It consequently
would follow that the statute is practically meaningless and
accomplished no beneficial results.

It is now contended that " originally " means a nomination
not made before the time required by the statute for the filing
of a certificate of nominations thirty days before election,
and that the limitation upon the powers of the committee
thereafter applies, whether it be a committee to make nomi-
nations or of filling vacancies.   I had supposed that the power
of a party to make nominations ended with the limitation of
time in which the certificate is required to be filed, and that
thereafter its power was limited to the filling of vacancies.   In
order to construe the statute in accordance with the sugges-
tion, it would practically have to be rewritten and reference
made to the thirty-day clause.   It would require something
more than the transposing of words and sentences or the
substituting of words in order to make the meaning of the
legislature clear.

It has been further suggested that the legislature had no
power to limit a party in making nominations.   Assume this
to be so.   The legislature in this case has not limited the power
of the convention to make nominations of candidates of another
party.   The convention may do so, or it may appoint a com-
mittee to meet a committee of another political party and agree
upon candidates who shall be supported by their respective

parties. Nor has the legislature limited the power of a convention to dispense with an annual session and delegate its power to a committee to make nominations for the next succeeding year. But in such a case the committee so appointed becomes the sole and original power to make nominations for that year, and consequently the provisions of the statute do not apply to nominations " made at the time and in the manner provided for making original nominations by such party." All that the legislature has attempted to do in this case is to regulate the manner in which nominations shall be made and to specify the extent to which a convention may delegate its powers to a committee. This does not, to my mind, infringe upon any of the constitutional provisions.

The order appealed from should be reversed.

WERNER and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J., and GRAY, J.; CHASE, J., concurs with CULLEN, Ch. J., only; HISCOCK, J., concurs, in memorandum, with GRAY, J., only on the ground first stated in his opinion; HAIGHT, J., reads dissenting opinion.

Orders affirmed, with costs.