HOPPER v. BRITT et al., City Board of Elections.

(Supreme Court, Appellate Division, First Department.  September 28, 1911.)

1. CONSTITUTIONAL LAW (§ 70*)—STATUTES—POLICY—JUDICIAL FUNCTIONS.

In determining the validity of an act, the court has nothing to do with the policy of the law, or whether in its opinion the legislation is beneficent or not.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132; Dec. Dig. § 70.*]

2. CONSTITUTIONAL LAW (§ 38*)—VALIDITY OF STATUTORY PROVISIONS—CONFLICT WITH SPECIFIC PROVISION.

To declare an act of the Legislature void as violating a constitutional provision, it is essential that the act of the Legislature should be in violation of some specific provision of the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 36; Dec. Dig. § 38.*]

3. ELECTIONS (§ 162*)—BALLOTS—CONSTITUTIONAL PROVISIONS.

Laws 1911, c. 649, amending Election Law (Consol. Laws 1909, c. 17) § 331, which provided that each political party should have a column upon the official ballot, giving the name of the political party and the emblem adopted by it as representing its candidates, in which column the names of all its candidates were to appear, whether such candidates had been nominated by other parties or by independent nomination or not, so as to provide that the name of no candidate for any elective office should appear more than once upon the official ballot, is merely a regulation of the form of the ballot, not affecting its secrecy, and is not in conflict with Const. art. 2, § 1, which provides that every male citizen of the age of 21 years possessing certain qualifications as to residence and citizenship "shall be entitled to vote at such election in the election district of which he shall at the time be a resident, and not elsewhere, for all elective officers," nor with article 2, § 4, which provides that laws shall be passed for ascertaining by proper proofs the citizens entitled to the right of suffrage, and for the registration of voters, nor with article 2, § 5, providing that all elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 162.*]

4. ELECTIONS (§ 162*)—CONSTITUTIONAL GUARANTIES—DISFRANCHISEMENT.

Laws 1911, c. 649, amending Election Law (Consol. Laws 1909, c. 17) § 331, which provided that each political party should have a column upon the official ballot, giving the name of the party and the emblem adopted by it as representing its candidates, in which column the names of all its candidates were to appear, whether nominated by other parties or by independent nomination or not, so as to provide that the name of no candidate for any elective office should appear more than once upon the official ballot, is not in conflict with Const. art. 1, § 1, which provides that no one "shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 162.*]

Clarke, J., dissenting.

Appeal from Special Term, New York County.

Application by John J. Hopper for relief by a peremptory writ of mandamus against J. Gabriel Britt and others constituting the Board

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Elections of the City of New York. From an order granting a writ of mandamus, Britt and others appeal. Order reversed, and application for mandamus denied.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGHLIN, MILLER, and DOWLING, JJ.

Terence Farley and Abram I. Elkus, for appellant Board of Elections.

D. Cady Herrick, for appellant Democratic State Committee.

Herbert R. Limburg, for respondent Hopper.

A. S. Gilbert, for respondent Koenig.

Albert S. Bard, for respondent Citizens' Union.

INGRAHAM, P. J. The petitioner, as a duly qualified elector and as chairman of the county committee of the Independence League, a political party existing in the state of New York which has polled more than 10,000 votes· for Governor at the last election for Governor held in the state of New York, alleges that chapter 649 of the Laws of 1911, so far as it amended section 331 of the general election law, being chapter 22 of the Laws of 1909 (Consol. Laws 1909, c. 17), is void as a violation of the Constitution of the state of New York. The Special Term held that this amendment to section 331 of the election law was a violation of the Constitution of this state, and directed that a mandamus should issue requiring the defendants, the board of elections of the city, of New York, to prepare a ballot as provided for by section 331 of the election law.prior to its amendment by chapter 649 of the Laws of 1911; and from that determination the defendants constituting the board of elections have appealed. The Special Term having declared this amendment of the election law void as being a violation of the Constitution, I think the court should express its opinion upon this question.

Under the system adopted 'in this state, which has been in force for many years, the state undertakes the preparation of the ballots to be voted upon by the people at the state and municipal elections, and the form of the ballot, the names of the candidates to be voted for, and the method by which the candidates who have been nominated for the several offices should be ascertained are controlled by various provisions of the election law. Prior to the adoption of the present Constitution, there were in force provisions of law establishing official ballots, regulating the method by which the names of candidates should appear upon them (see chapter 680, Laws 1892), and the method of voting; and the authority of the Legislature to regulate the official ballot had been unquestioned. By chapter 810 of the Laws of 1895, after the adoption of the Constitution, the statute law was amended so that each political party recognized by the election law had a column upon the official ballot which stated the name of the political party and the emblem adopted by the political party as representing its candidates for office, and in this column were stated the names of the candidates of such political party, together with the titles of the offices for which they were candidates; so that, under the name of each political party and its emblem, it had the names of the candidates

nominated by that party, whether such candidates had been nominated by other parties or by independent nomination. That system continued down to the amendment of 1911, which is now in question.

By this amendment of section 331 of the election law a change was made so that the name of no candidate for any elective office should appear more than once upon the official ballot; the provision being:

"If any person shall have been nominated by more than one political party or independent body for the same office, his name shall be printed but once upon the ballot, and shall appear in the party column of the party nominating him which appears first upon said ballot, unless the said candidate shall by a certificate in writing duly signed and acknowledged by him request the custodian of primary records to print his name in the column of some other party or independent body which shall have nominated him, in which event his name shall be printed in such other column only."

It would seem that this is merely a regulation as to the form of the ballot and the position upon the ballot of the name of a candidate for the office which is to be filled at the election. It leaves each political party unrestricted power of nomination, gives to an elector the unrestricted and unimpaired power to vote for any person he chooses for the office to be filled, and gives to each aspirant for the office the right to have his name printed upon the ballot as a candidate of any party or independent body for any office to which he aspires if he obtains a nomination by either a political party or an independent body of citizens. It imposes upon an elector the obligation to mark the name of the candidate for whom he desires to vote upon that portion of the ballot where it is printed. It certainly cannot be assumed that the electors are so little concerned with the persons whom they desire to elect to office that they will not take the trouble to look through the ballot and pick out the names of the candidates for whom they desire to vote.

[1] In determining the questions as to the validity of this provision of the election law, we have nothing to do with the policy of the law, or whether in our opinion the legislation is beneficent or not.

[2] To declare an act of the Legislature void as violating a constitutional provision, it is essential that the act of the Legislature should be in violation of some specific provision of the Constitution.

[3] Article 2 of the Constitution contains the provisions applicable to elections. Section 1 of that article provides for the qualifications of voters, and by it every male citizen of the age of 21 years possessing certain qualifications as to residence and citizenship "shall be entitled to vote at such election in the election district of which he shall at the time be a resident, and not elsewhere, for all officers that now are or hereafter may be elective by the people." Section 2 excludes certain persons from the right of suffrage. Section 4 provides that laws shall be passed for ascertaining by proper proofs the citizens who shall be entitled to the right of suffrage and for the registration of voters. And section 5 provides:

"All elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved."

I can see nothing in any of these provisions of the Constitution that is violated by this provision in question. The only reference to the method by which the electors are to express their choice is that contained in section 5 of the article, and that would seem to leave that question entirely to the Legislature with but one qualification—that secrecy in voting must be preserved. It is not claimed that the adoption of this system would tend to violate this mandate. The statute in question provides for what the Legislature assumed to be the proper grouping of the names of the candidates upon the ballot. There is no provision that in the slightest degree restricts the power of any political party or independent body to nominate any person as a candidate for any office, and the name of a person nominated appears on the ballot as the nominee of the party or body nominating him. There is no provision which in any way restricts the right of any elector to vote for any person for office. What the act does is to regulate the form of the ballot and the position in which the names of the candidates for office shall appear.

[4] It is, however, claimed by the respondents, and this claim was sustained by the Special Term, that this provision in some way violates section 1 of article 1 of the Constitution, which provides that "no member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers." I can see no way in which this section of the election law as amended in any way deprives any person of any right or privilege to which he is entitled. No person certainly is disfranchised, and, as before stated, no elector is prevented from voting for any candidate for office.

Great reliance was placed by the court below upon the case of Matter of Callahan, 200 N. Y. 59, 93 N. E. 262. The court in that case had before it a provision of a statute which forbade a committee of any party or independent body authorized either to make nominations or to fill vacancies to nominate a candidate of another party or independent body for the same office; and that provision was held to violate the Constitution of this state. But what was there condemned was a provision prohibiting the nomination of a particular person as a candidate for a public office to be voted for at an election. What was said by the court must be considered as said in relation to such a provision, and not in relation to a law which merely regulates the form of ballot, and provides for the printing of the names of such candidates as shall have been nominated for the offices to be filled at the election. It was there decided in the language of the court:

"The proposition which I assert is this: That, if the Legislature does grant to any convention, committee, or body the right to make nominations, it cannot limit the right of such convention, committee, or body to nominate as its candidate any person who is qualified for the office. The electors have the right to vote for whom they will for public office, and this right cannot be denied them by any legislation."

The question in this case is so entirely different that I do not think the decision of the question there presented or the discussion in the opinions of the court have any relevancy upon this appeal.

The decisions of the courts of several other states are cited by counsel for both parties, but such examination as I have been able to make of them has satisfied me that they throw little light upon the concrete question here presented, and the necessity of an early decision in this case prevents a more extended discussion of the question. My conclusion, therefore, is that this section of the election law as amended by the act of 1911 is not in violation of any provision of the Constitution, and that the relator was not entitled to a mandamus.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the application for a mandamus denied, with $50 costs, as matter of law, and not in the exercise of discretion.

McLAUGHLIN, MILLER, and DOWLING, JJ., concur.

CLARKE, J. (dissenting). In the Matter of Callahan, 200 N. Y. 59, 93 N. E. 262, Chief Judge Cullen, with whom concurred four of the learned judges of the Court of Appeals, said:

"I shall not discuss the extent of the power of the Legislature to regulate elections other than to say that concededly the power must be so exercised as not to deny or impair the rights of the electors. * * * The proposition which I assert is this: That, if the Legislature does grant to any convention, committee, or body the right to make nominations, it cannot limit the right of such convention, committee, or body to nominate as its candidate any person who is qualified for the office. The electors have the right to vote for whom they will for public office, and this right cannot be denied them by any legislation. * * * Equally, any body of the electors has the right to choose whom it will for its candidate for office and to appeal to the whole electorate for votes in its behalf. * * * If it (the Legislature) cannot enact arbitrary exclusions from office, equally it cannot enact arbitrary exclusions from candidacy for office. What exclusion could be more arbitrary than that one party or organization should not be permitted to nominate the candidate of another? * * * The fact is plain that the legislative provision is solely intended to prevent political combinations and fusions, and this is the very thing that I insist there is no right to prevent or hamper as long as our theory of government prevails, that the source of all power is the people as represented by the electors. * * * Legislation to be valid must not only not deprive the elector of his right to vote for whom he will, but for what candidate he will, and it must not discriminate in favor of one set of candidates against another set."

In that case the statute condemned as unconstitutional was section 136 of the election law (Consol. Laws 1909, c. 17), which provided:

"Where no nomination shall have been originally made by a political party or an independent body for an office, or when a vacancy shall exist, it shall not be lawful for any committee of such party or independent body authorized to make nominations or to fill vacancies, to nominate or substitute the name of a candidate of another party or independent body for such office, it being the intention of this chapter that when a candidate of one party is nominated and placed on the ticket of another party or independant body, such nomination must be made at the time and in the manner provided for making original nominations by such party or independent body."

Three candidates for the office of justice of the Supreme Court had been nominated by the Republican Party. Subsequently the same candidates had been nominated by a committee of the Independence League. Objections to the certificate of nomination executed by said committee were filed with the Secretary of State.

It will be seen that the names of these candidates would have appeared upon the official ballot in the ticket of the Republican Party, and any elector desiring to vote for them would have had the opportunity to so vote by marking the voting space opposite these names upon said ticket. They had been nominated by the Independence League, and as candidates of said league their election would have been advocated by said league and its adherents instructed how to cast their votes for them. But the right to nominate was held so important, the right to appear upon the ticket of the Independence League so essential, that a statute denying said right was held void. It seems to me that the reasoning of the opinion cited applies to the matter at bar. "The fact is plain that the legislative provision is solely intended to prevent political combinations and fusions, and this is the very thing that I insist there is no right to prevent or hamper."

Political parties are recognized in Const. art. 2, § 6. They are recognized in the election laws. The official ballot itself is not of the Massachusetts form where all candidates are grouped under the title of the respective offices, but provides for separate party tickets, for convenience spread side by side on one piece of paper. Heretofore all candidates of the party appeared upon the ticket of the party. By the law in question, if fusion exists, this is not so. A party ticket is not complete. An elector desiring to vote the whole ticket must grope his way through a large ballot to find his party's nominees. He may not notice the words "See column" which are to be printed in the same type as the names of candidates, and so vote it as a complete ticket. There is no nomination, for the candidate's name does not appear where it should upon his party ticket, but upon some other. As the purpose of the law is obvious, I think this matter is controlled in principle by the Callahan Case, supra.

I dissent and vote to affirm the order appealed from.

---

KOENIG v. BRITT et al., City Board of Elections.

(Supreme Court, Appellate Division, First Department. September 28, 1911.)

Appeal from Special Term, New York County.

Application of Samuel S. Koenig for relief against J. Gabriel Britt and others, constituting the Board of Elections of the City of New York. From an order granting a motion for mandamus, the parties aggrieved appeal. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

