(75 Misc. Rep. 143.)

### HOPPER v. BRITT et al., Board of Elections.

(Supreme Court, Special Term, New York County. January, 1912.)

1. ELECTIONS (§ 120*)—PRIMARY ELECTIONS—STATUTORY PROVISIONS.

The provision in Election Law (Consol. Laws 1909, c. 17) § 37, as added by Laws 1911, c. 891, § 27, exempting the city of New York from spring primaries and requiring them to be there held in the fall, having been enacted palpably through inadvertence, and being impossible of application, the law will be construed as if such provisions were nonexistent.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 120.*]

2. ELECTIONS (§ 22*)—PRIVILEGES AND IMMUNITIES OF CITIZENS—RIGHT TO VOTE.

The provision of Election Law (Consol. Laws 1909, c. 17) § 58, as added by Laws 1911, c. 891, § 29, that the name of a candidate shall not appear more than once on the ballot as a candidate for the same public office or position, is violative of Const. art. 1, § 1, providing that no person shall be deprived of any of the rights or privileges secured to any citizen except by the law of the land or the judgment of his peers.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15; Dec. Dig. § 22.*]

3. ELECTIONS (§ 120*)—PRIVILEGES AND IMMUNITIES OF CITIZENS—RIGHT TO VOTE.

Under Const. art. 1, § 1, providing that no person shall be deprived of any of the rights or privileges secured to any citizen, unless by the law of the land or judgment of his peers, the right of electors to nominate candidates at an official primary election must be surrounded by the same safeguards as their rights to vote at the general election.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 120.*]

4. ELECTIONS (§ 21*)—PRIMARY ELECTIONS—CONSTITUTIONAL STATUTORY PROVISIONS.

Election Law (Consol. Laws 1909, c. 17) § 57, as added by Laws 1911, c. 891, § 29, providing that the party emblem shall constitute the committee emblem of the party in a primary election, creates an unconstitutional discrimination.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15; Dec. Dig. § 21.*]

5. STATUTES (§ 64*)—EFFECT OF PARTIAL INVALIDITY.

The invalidity of the provision in Election Law (Consol. Laws 1909, c. 17) § 58, as added by Laws 1911, c. 891, § 29, that the name of a candidate shall not appear more than once on the ballot as a candidate for the same office, does not affect the validity of the remainder of the law.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58-66, 195; Dec. Dig. § 64.*]

6. STATUTES (§ 64*)—EFFECT OF PARTIAL INVALIDITY.

The invalidity of the provision in Election Law (Consol. Laws 1909, c 17) § 57, as added by Laws 1911, c. 891, § 29, that the party emblem shall constitute the committee emblem of the party in a primary election, is an inseparable part of the section covering the use of emblems on ballots at primary elections, and invalidates the section, but does not affect the remainder of the law.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. § 64.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

· Application by John J. Hopper for writ of mandamus to J. Gabriel Britt and others, constituting the Board of Elections of the City of New York.· Motion granted.  ·

Order modified on appeal, 149 App. Div. 94, 133 N. Y. Supp. 778.

Herbert R. Limburg, for relator.

Archibald R. Watson, Corp. Counsel, for respondents.

BIJUR, J.. This is an application for an order or a writ of mandamus requiring the respondents to provide official primary ballots for the spring primary to be held on the last Tuesday in March, 1912, without regard to certain provisions of chapter 891 of the Laws of 1911, commonly known as the Direct Primaries Law, which provisions are claimed to be unconstitutional.

The provisions so referred to are:

[1] (a) The provision in section 37 of the Election Law (added by section 27 of the act) which exempts the city of New York from spring primaries and requires them to be there held in the fall. Of this provision it may be said at the outset that the respondents concede that it was enacted palpably through inadvertence, and is impossible of application—for reasons which need not be further set forth—and that the law should be construed as if the provisions were nonexistent; and I do so hold.

(b) The provision in section 57 (added by section 29 of the act) that:

"The party emblem shall constitute the committee emblem of the party."

This provision awards to what is commonly known as "the organization" the exclusive right to use in primary contests for the nomination of candidates the party emblem at the head of the column of its candidates, as against other arbitrary emblems which may be selected by independent factions of the electors.

(c) The provision in section 58 (added by section 29 of the act) reading:  ·

"The candidates designated by party committee shall be so arranged in the column to the extreme left."

I may say that I am not convinced that this requirement of position of the columns on the ballot establishes a discrimination of a character sufficiently substantial to warrant a holding that it is unconstitutional. See Matter of Hopper v. Britt, 203 N. Y. 155, 96 N. E. 371.

[2] (d) The clause in section 58 (added by section 29 of the act):

"The name of a candidate shall not appear more than once on the ballot as a candidate for the same public office or public position."

As to this clause it is conceded by the respondents that it establishes a discrimination even more obnoxious than the one held to be unconstitutional in Matter of Hopper v. Britt, 203 N. Y. 155, 96 N. E. 371, the decision which holds the Levy Law to be unconstitutional, in that the corresponding clause there condemned provided at least a cross-reference in place of the name of the candidate in the column where his name did not appear through the use of the words "see column," with a reference to the party column under which the name was printed. This ameliorating reference is not provided in the Primary Law.

It is therefore conceded by the respondents that this provision in the Primary Law is unconstitutional, provided the inhibitions of the Constitution decided to be controlling in the case just cited apply as well to primary elections as to general elections. This question, therefore, constitutes the main point to be decided on the present application.

[3] The Constitution (article 1) reads:

"Persons not to be disfranchised. Section 1. No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

The right to vote has always been regarded as one of the chief attributes of citizenship; but the right to nominate candidates for whom the electors may vote at the general election has been, as is evidenced by the political literature of the past half century, regarded as a corollary. Indeed, during the last quarter century, the tendency has been to treat the right to nominate candidates as an element of the franchise quite as important as the right to vote at a general election. It is true that legislative regulation was first directed to the orderly control of general elections. Systematic regulation of the primaries has been the product of comparatively recent years. The legislation, however, directed to both purposes, has been regulative and not creative. It is not pretended that the right to nominate has been conferred by the Legislature any more than has been the right to vote. As long as the right to nominate was left undirected by the Legislature, there could of course be no claim of unconstitutional discrimination. Since, however, the Legislature has undertaken to control this important privilege of the elector, there seems to be no reason to doubt, and every ground —arising out of our political history and the logic of the situation—to believe, that the right to nominate must be held to be protected by the same safeguards as surround the right to vote at a general election. This would be my view were the question presented as one of first impression; but, fortunately, in this state the question is no longer an open one, in view of the decisions of the Court of Appeals in the Hopper Case, supra, in Matter of Callahan, 200 N. Y. 59, 93 N. E. 262, 140 Am. St. Rep. 626, and Matter of Burke v. Terry, 203 N. Y. 293, 96 N. E. 931. In Matter of Callahan the language of the learned Chief Justice, concurred in by a majority of the court, is as follows:

"I wish to place my vote on a broader ground. * * * The electors have the right to vote for whom they will for public office, and this right cannot be denied them by any legislation. (Cases cited.) Equally, any body of the electors has the right to choose whom it will for its candidate for office and to appeal to the whole electorate for votes in his behalf. * * * If it (the Legislature) cannot enact arbitrary exclusions from office, clearly it cannot enact arbitrary exclusions from candidacy for office."

Respondents urge that the decision in Matter of Hopper was influenced as much by article 2, §§ 1 and 5, of the Constitution, prescribing the qualification of voters and the manner of voting, as by article 1, § 1, which I have first above quoted; and that since article 2, §§ 1 and 5, by their very terms apply solely to general elections, the reasoning by which the court arrived at the unconstitutionality of the

Levy Election Law is not applicable to an adjudication on similar provisions in the Primary Law. I do not agree with this contention, because I cannot find in the decisions in Matter of Hopper anything to indicate that article 2, §§ 1 and 5, were regarded as the basis of, or indeed as a factor in, the decision that an unlawful discrimination was fixed by the law. That question, however, is also set at rest by the language of the court, again concurred in by a majority of that learned body, in Matter of Burke v. Terry, supra:

"The franchise, of which no member of this state may be deprived, is not only the right of citizens who possess the constitutional qualifications to vote for public officers at general and special elections, but it also includes the right to participate in the several methods established by law for the selection of candidates to be voted for."

Thus, in the light of reason and the light of the political history of our republic and of our state, as well as upon learned precedents hereinabove recited, I am constrained to hold this provision in section 58 of the Election Law (as added by section 29 of the act under discussion) obnoxious to article 1, § 1, of the Constitution.

[4] It remains, then, to discuss the requirement that "the party emblem shall constitute the committee emblem of the party." It is scarcely to be doubted that the use of the emblem habitually employed by a party as a whole at the head of a column containing the names of the condidates put forward at the primary by what must, for the purposes of the primary, be regarded as only a section of the party, awards a distinct advantage to that section. Thousands of voters whose pride it is to be "regular," and who are wont to express that position by the phrase "that they have always voted under the party emblem," must necessarily be affected in a primary contest by the consideration that, if they vote for a candidate of any section of the party other than the "organization," they must vote under other than the party emblem. Apart, then, from other factors, this alone would constitute a patent discrimination in favor of the committee, namely, the "organization." Indeed, I am not sure that this consideration may not be frankly admitted by respondents. What they urge in their brief is that discrimination is a necessary and proper one, and no greater in this respect than is admittedly justified, by acquiescence at least, in the case of the use of a party emblem by a party at a general election. They argue that the committee which makes the designation of the candidates has received at the previous primary a majority of the votes cast by that party. "It stands in the identical position of the party which had succeeded in electing its gubernatorial candidate and received the highest number of votes. The Primary Law has followed the precedent thus established by the General Election Law. * * * Again, if the party committee is not entitled to the party emblem, who is?" The fallacy in this reasoning lies in failing to recognize the palpable and determinative distinction between a general election and a primary election. So long as the existence of parties is recognized, as it is, under our system of government, the contest at elections must, in large part at least, be between parties; and, in view of that fact, the use of a party emblem to distinguish one party from

another has been approved. If it constitutes a discrimination, it has been recognized as a necessary one. Of what possible significance, however, except for an inappropriate purpose, can be the party emblem in a contest within the party, when the very object of the contest is to determine who shall be regarded as the official representatives of the party? Indeed, my reasoning may be well summed up by answering respondents' question, "If the party committee is not entitled to the party emblem, who is?" to the effect that at a primary election no one is so entitled. The use of a party emblem at a primary election seems to me to be not only unnecessary, but totally inappropriate, and to establish, therefore, an unconstitutional discrimination in favor of one section of the party as against all others.

[5] The only remaining question is whether the two provisions thus regarded by me as unconstitutional are so separable from the remainder of the law as to permit it to stand unaffected by their exclusion. I think that the clause in section 58 of the Primary Law (added by section 29 of the Laws of 1911, chapter 891), "the name of a candidate shall not appear more than once on the ballot as a candidate for the same public office or party position," may be eliminated from the law, leaving it complete when free from this obnoxious inhibition. This conclusion, it seems to me, is clearly justified by the legislation itself as well as by analogy from the decision in the Hopper Case, supra.

[6] The provision in section 57 of the Election Law (added by section 29 of the Laws of 1911, c. 891), "the party emblem shall constitute the committee emblem of the party," is an inseparable part of section 57, covering the use of emblems on ballots at primary elections. With the obnoxious phrase removed, the committee would be left without an emblem of its choice, since other emblems are provided to be selected only by "petition." It is true that, in default of the selection of an emblem, one must be provided by the Secretary of State; but that provision may scarcely be regarded as an adequate substitute for the right of the committee to select its own emblem. I am inclined therefore to the opinion that the elimination of the unconstitutional clause requires the elimination of the whole of section 57, covering the use of emblems. The employment of emblems at a primary election is an entirely new device, and it may be that the use of the blanket ballot at primary elections (which is also new) might be regarded by analogy with the reasons for their use at general elections, as entailing the employment of emblems at the head of each column. In the absence, however, of any proof on this subject in the papers on this application, or even of argument in the briefs of counsel, I know of no reason why the primary elections cannot be held fairly by complying in all other respects with the provisions of the act, and yet without the use of emblems.

My decision, therefore, is: (1) That the phrase "except in the city of New York, where they shall be elected in the fall primary," contained in section 37 of the Election Law (added by section 27 of chapter 891 of the Laws of 1911), is one inserted by patent and acknowledged inadvertence, and that the law should be read and construed

as if such phrase were nonexistent. (2) That the sentence in section 58 of the Election Law (added by section 29 of chapter 891 of the Laws of 1911), "the name of a candidate shall not appear more than once on the ballot as a candidate for the same public office or party position," establishes an unconstitutional discrimination and must be eliminated from the law.. (3) That by reason of the unconstitutional discrimination established by the phrase "the party emblem shall constitute the committee emblem of the party," the whole of section 57 of the Election Law (added by section 29 of chapter 891, Laws of 1911) must be eliminated from the law; and (4) that the law as thus construed, and with these exceptions, so far as concerns any issue before me, is constitutional and should be enforced.

The motion for a writ of mandamus is granted accordingly. Motion granted.