In the Matter of RAYMOND C. INGERSOLL, Petitioner, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, June 28, 1947.

*Hyman N. Glickstein* for petitioner.

*Charles E. Murphy, Corporation Counsel (Russell L. Tarbox* of counsel), for William J. Heffernan and others, constituting the Board of Elections of the City of New York, respondents.

*Jacob Markowitz* for William Croker, objector-respondent.

*Louis J. Lefkowitz* for New York Republican County Committee, *amicus curiæ.*

*Samuel D. Smoleff* for Citizens Union, *amicus curiæ.*

*Walter M. Weis* for City Club of New York, *amicus curiæ.*

*Leonard M. Lake* for National Lawyers Guild, New York City Chapter, *amicus curiæ.*

*Matthew M. Levy* and *Benjamin Gassman* for Liberal **Party** of New York, *amicus curiæ.*

Null, J. This proceeding was instituted pursuant to subdivision 1 of section 330 of the Election Law. The petitioner is a duly enrolled voter of the American Labor Party. On the 18th day of June, 1947, there was filed with the Board of Elections in the City of New York a petition designating the petitioner as a candidate for the Democratic Party nomination for the office of State Senator from the 23d Senatorial District of New York. On the 24th day of June, 1947, the Board of Elections rejected the petition wholly on the ground that the petitioner, admittedly an enrolled voter of the American Labor Party, had failed to procure the assent of the appropriate party committee of the Democratic Party as required by section 136-a of the Election Law (L. 1947, ch. 432), known as the Wilson-Pakula Law.

The only issue raised is as to the validity of the Wilson-Pakula Law. The petition, as presented, does, indeed, suggest the question as to whether the petitioner may be deemed a person aggrieved within the meaning of the Election Law. On the argument and in the briefs, however, the parties, with commendable candor, chose to address themselves solely to the merits of this application, and I shall, therefore, not consider this phase of the matter.

The Wilson-Pakula Law was enacted at the recent session of the Legislature. Briefly, it provides that one who is not an enrolled member of a political party cannot be designated for nomination by that party for public office unless his designation be authorized by the appropriate party committee as defined by the Election Law. The petitioner asserts that the statute contravenes the Constitution of the State of New York in that he has been prevented from submitting his candidacy to the enrolled voters of the Democratic Party in the coming primary election and that such voters have been deprived of the right to vote for him in that election.

I am not unaware of the traditional strictures upon a court at nisi prius in its approach to statutory construction upon a challenge on the ground of unconstitutionality. Moreover, I **am confronted with the determination made by this court at**

Special Term in the Third Department upholding the validity of the statute here considered (*Matter of Ingersoll* v. *Curran*, 188 Misc. 1003). Then, too, I have been informed that within a short time this question is to be reviewed by the Court of Appeals.* Thus circumscribed, it is only necessary to restate the familiar doctrine that the scope of legislative power is absolute and unlimited except as restrained by the Constitution, and that every act of the Legislature must be presumed to be consonant with the fundamental law until the contrary is clearly established.

The process of making nominations is governed by those sections of the Election Law which had their origin in 1911 in enactments of that group of laws which initiated the direct primary system (L. 1911, ch. 891 *et seq.*). Prior to the introduction of the direct primary system, which for most offices established nominations by popular elections, candidates for public office were nominated by party conventions or by committees of such conventions. The direct primary is the successor to the party caucus and the complex delegate convention system which, as Judge VANN put it in 1912 in the opening sentence of the opinion in *Matter of Hopper* v. *Britt* (204 N. Y. 524, 527), " prevailed in this state for time out of mind * * *." The point is that the rights and privileges flowing from the laws relating to primary elections were created by legislative action alone without any express constitutional mandate upon the Legislature to do so.

It is pertinent, moreover, to note that the successive legislative enactments, by which the direct primary system in this State has been extended and defined, have followed the pattern of the closed primary as distinguished from the open primary adopted in California and Wisconsin (Brooks, Political Parties and Electoral Problems, pp. 247–252). Some of the principal characteristics of the closed primary are that voting at primary elections is restricted to those who have enrolled in a party in the preceding year (Election Law, § 207, subd. 1); that only such enrollees are eligible for election to the various party committees and conventions authorized by the Election Law (Election Law, §§ 11, 12, 13); that signers of designating petitions are required to affirm that they intend to support the person so designated (Election Law, § 135); that one who participates in a party primary cannot thereafter be the signatory on an independent nominating petition for a candidate for

* Since affd. without opinion 297 N. Y. 522.— [REP.

similar office at the same election (Election Law, § 137, subd. 4).

The act of enrollment in a political party is made on a "blank" furnished by the election authorities on which the voter declares his general sympathy with the principles of the party in which he desires to enroll and his intention generally to support the candidates of that party (Election Law, § 172). A method is prescribed by which the *bona fides* of enrollment may be challenged and the enrollment stricken at the instance of certain party officers (Election Law, § 332).

From all this, it is quite plain that participation in primary elections is not a matter of absolute right. It is a privilege restricted to those voters who, by the formal processes provided by law, have enrolled in a political party. The primary election is a party function, available only through the medium of a political organization.

The emphasis upon abstractions is apt to be misleading. It is against the background of expressed legislative policy that the petitioner's contentions of invalidity must be considered.

The principal authority relied upon by the petitioner is the holding in *Matter of Callahan* (200 N. Y. 59). Many contentions have been urged upon me in reply. It has been suggested that the determination in the *Callahan* case (*supra*) should be considered solely in relation to the circumstances there disclosed; that it was determined prior to the advent of the direct primary system and for that reason could not serve as a competent yardstick for the validity of legislation enacted after more than thirty-five years of experience in the practical operation of the direct primary; that the tests of constitutionality applied in the *Callahan* case are no longer valid. It is unnecessary, however, to accept any of these views. The fact is that the statute considered in the *Callahan* case (Election Law of 1909, § 136) is distinguishable, in at least one salient respect, from the Wilson-Pakula Law. In the *Callahan* case there was an absolute prohibition upon committees in the nomination of candidates other than members of their respective parties; under the Wilson-Pakula Law persons not members of the party in which they desire to be candidates may still be designated for nomination. The requirement is that their designation shall be authorized by the appropriate party committees. While it is true that such procedure, as with the write-in vote, may not be as easy to achieve as a prescribed number of signatures, it is a condition which is neither arbitrary nor unreasonable. The petitioner overlooks that the essence of the holding in *Matter of Callahan* (*supra*) as well as in the dictum in *Matter of*

*Hopper* v. *Britt* (204 N. Y. 524, *supra*), is not that the Legislature was without power to regulate the eligibility of candidates or voters in direct primaries. On the contrary, in the *Callahan* case, Chief Judge CULLEN took it for granted (p. 61) " * * * that the legislature may prescribe in what manner and by what bodies nominations for office may be made." The test of constitutional validity, even as laid down in those cases, is whether an enactment affecting nominations is " arbitrary " and " unreasonable " in the sense that it is tantamount to a restraint upon freedom in voting as guaranteed by section 1 of article II of the New York State Constitution.

A political party is something more than a medium for nomination or election to public office. The formulation of party principles and policies is a duty which, if political parties are to continue to serve their historical functions in the scheme of the democratic process, transcends the mere purpose to elect particular candidates to public office. The burden of integrating and harmonizing party concepts locally and nationally is entrusted to party committees and party officers. Under the Election Law, the party committees are charged with the management of the party function. In contemplation of law and in fact, they represent the enrolled voters of that party. Who, than those entrusted by the enrolled voters with the administration of party affairs, are more qualified to determine whether it is in the interest of the party as a whole to sanction the candidacy of one who is the member of an opposing party?

It seems to me to be incongruous that one who is not eligible to vote in the primary of a particular party shall, nevertheless, insist that, as a matter of right, he is eligible to be a candidate of that party. Party integrity loses its meaning in the face of conditions which make it possible to produce a party ticket on which there are candidates who may be hostile not alone to the principles of the party under whose emblem they run, but critical of the candidates whose running mates they are. Whether intended or not, the petitioner's position implies that there is no distinction in principle among political parties, that the symbol of all political parties may be contended for by friend or foe alike. It may be pertinent to add that the technique by which one hostile to a political party may yet appear as its candidate points the way to the inevitable disintegration of all political parties.

Nor is the limitation prescribed by the Wilson-Pakula Law without precedent. A similar limitation may be found in the statute applicable to the election of councilmen of the City of

New York. No primary election is provided for the nomination of councilmen; their nomination is made solely by petition. The name of a political party is, as in the Wilson-Pakula law, restricted to those candidates who are authorized by the county committee or other appropriate committee of that party to use it on the ballot (New York City Charter, § 1005, subd. 2, enacted and approved by referendum in 1936, constitutionality considered and approved in *Johnson* v. *City of New York*, 274 N. Y. 411, 426).

In the circumstances, I am unable to conclude that the restriction embodied in the Wilson-Pakula Law is arbitrary or unreasonable. Its enactment is consistent with the legislative policy as expressed in prior statutes throughout the years. There is no impairment in the exercise of the elective franchise or any deprivation of the petitioner's right to be a candidate for public office. He is qualified to be a candidate of his own party; he may seek and secure independent nominations. There is, however, no constitutional provision guaranteeing to him the right to be the candidate of a party to the objectives and purposes of which he is opposed.

The petition is denied. To facilitate the ultimate disposition of the questions here raised, this memorandum and the short form order entered simultaneously herewith will be deemed the final order.