JOSEPH ALEXANDER and DANIEL W. AMBROSE,
respectively, President and Secretary
of the Democratic Party of the
Virgin Islands, acting on behalf of
the Democratic Party of the Virgin
Islands, Plaintiffs

v.

HENRITA TODMAN, Supervisor of Elections,
and EARLE B. OTTLEY, EVADNEY
PETERSEN, ROY A. ANDUZE, RANDAL
N. JAMES, JOHN L. MADURO, FRANK
PETERSEN, RUTH E. LaBEET, PATRICK
N. WILLIAMS, A. DAVID PURITZ,
GENEVIEVE THURLAND, AUREO DIAZ,
WARREN E. BROWN, RENHOLDT JACKSON,
GERALD M. CHRISTIAN, CLARENCE A.
HEYLIGER, MARIO N. de CEABERT,
PERCIVAL H. REESE, VALUEMAR A. HILL,
ALFREDO LIMA, CHARLES W. TUMBULL,
HERMAN F. SMITH, and JARVIS B.
ABRAMSON, hereinafter referred to
as the MORTAR AND PESTLE GROUP
for brevity, Defendants

## Civil No. 260-1963
## District Court of the Virgin Islands
### Div. of St. Thomas and St. Croix
## July 17, 1964

590

Cox and Bornn, Esqs., Charlotte Amalie, Virgin Islands, *for plaintiffs*

Shea and Gardner (Alfred L. Scanlan, Esq., of counsel, admitted pro hac vice), Washington, D. C. and Antoine L. Joseph, Esq., Frederiksted, Virgin Islands, *for defendant, Henrita Todman*

591

JOHN L. MADURO, ESQ., Charlotte Amalie, Virgin Islands, JAMES A. BOUGH, ESQ., Charlotte Amalie, Virgin Islands, and COVINGTON and BURLING (DAVID ISBELL, ESQ., of counsel, admitted pro hac vice), Washington, D. C., *for remaining defendants*

GORDON, *Judge*

This is a civil action wherein the plaintiff brought an action against the defendant Todman, which action is substantially the same cause of action as that in the case of Alexander v. Todman, Civil No. 158-1963 (4 V.I. 580), and decided by this Court on July 17, 1964, and which the Court will incorporate by reference, and the remaining defendants, hereinafter called the Unity Party. In this opinion the Court will only deal with the second cause of action against the Unity Party. The second amended complaint in substance alleges that the Unity Party through a fraudulent, collusive and conspiratorial scheme took over the control of the Democratic Party of the Virgin Islands, and in its prayer for relief asks the Court to give back control of the Democratic Party of the Virgin Islands to the plaintiff.

The Democratic Party of the Virgin Islands, the plaintiff herein, has been a political organization in the Virgin Islands for over thirty years and has supported candidates in local elections for elective office. It has sponsored and has affiliated with it four political clubs: The St. John Democratic Club, The Democratic Club of St. Thomas, The Democratic Club of Christiansted and The Democratic Club of Frederiksted. Membership in the party is gained by becoming a member of one of these clubs. These clubs have sought and obtained members which presently number 1300. In general elections held in the Virgin Islands, the plaintiff was supported by votes of its members as well as by votes of other electors who were not members of its clubs.

During the years of its existence the plaintiff has continually done the following things to form a strong political party: it has sponsored and supported candidates running for public office; it has financially assisted these candidates in running for public office; it has used the various news media to set forth the political philosophies of those candidates it supported for public office and the philosophy of the Democratic Party of the Virgin Islands; it has participated in the various conventions of the National Democratic Party in the United States by sending a National Committeeman and National Committeewoman as well as delegates to the National Conventions; it has made the name of the Democratic Party of the Virgin Islands known to all residents of the Virgin Islands as a political party which has no association with any other political party in the Virgin Islands; and it has become known to the people of the Virgin Islands that its candidates are running in opposition to candidates of other political parties in the Virgin Islands.

Since the year 1954 there has been organized an unincorporated political party in the Virgin Islands known as the Virgin Islands Unity Party and later known as the Virgin Islands Unity-Democratic Party, hereinafter called the Unity Party. This party has no affiliation with any national political party in the United States. The Unity Party has a similar type of organizational set up as that of the Democratic Party of the Virgin Islands and has a membership approximating 1,000. It has become known as a separate political organization not affiliated or connected with any other political organization or party in the Virgin Islands. The political philosophy of the Unity Party differs widely from that of the Democratic Party so as to be irreconcilable. At the last general election the Unity Party won six of the eleven seats in the Virgin Islands Legislature. The remaining five seats were won by the Democrats.

The Unity Party through its officers, executive committee, and those working closely with them desired to obtain an affiliation with a national party in the continental United States. Thus, to achieve this end, the Unity Party through devious and sleight of hand manuevers planned to take over control of the Democratic Party.

A chronology of events may be most illuminating. On or about January 11, 1963, the Unity Party voted to change its name to the Virgin Islands Unity-Democratic Party. It also had the various clubs affiliated with it change their names accordingly. This was the first step in making the electorate believe that it was affiliated with the National Democratic Party in the United States. The second important stage of its scheme was in April, 1963. It caused a petition to be circulated among its members which was signed by 165 qualified voters, the vast majority of whom were Unity Party members. The obvious purpose of the petition was to register the Unity Party as the Democratic Party of the Virgin Islands. This petition was filed on May 1, 1963, pursuant to 18 Virgin Islands Code § 301(c). It is interesting to note at this time that the Democratic Party had already filed its petition on April 19, 1963, and that petition had been accepted by the Supervisor of Elections. Members of the Unity Party who testified at the trial of this matter tried to explain why the second petition was filed. The reason they cited was their fear that the Democratic Party might withdraw from primaries pursuant to 18 Virgin Islands Code § 301(e). The Court finds no evidence to this effect or reason to suspect that this was the plan of the Democratic Party and as a matter of fact, there was testimony to the contrary. The Court further finds that the petition filed on May 1, 1963, was in reality a petition registering the Unity Party under the name of the Democratic Party of the Virgin Islands. The third major step of this scheme occurred on the evening of May 1, 1963. The Unity Party called a meeting of its

membership. The purpose of this meeting was known only to the executive officers of the Unity Party. No notice of the purpose of the meeting was made known to the general membership. At this meeting the Unity Party voted itself out of existence. This dissolution is made known to the Court through the testimony of members of the Unity Party. They could produce no minutes of the meeting.

The Court would like to comment at this time that it feels even if the Unity Party was dissolved it was a breach of a fiduciary relationship between the officers of the party and its membership not to register the Unity Party with the Supervisor of Elections. To dissolve a party *after* it is precluded from registering itself, appears to the Court as another of those "innocent" occurrences which add up to part of the conspiracy. The next step in the conspiracy occurred between May 1, 1963, and May 15, 1963, when the Unity Party through its officers caused certain functions to be held on the Island of St. John and printed programs and tickets (Plaintiff's Exhibit Number 38) which stated that these functions were held by the St. John Democratic Club. This was all done without the permission of the St. John Democratic Club which was affiliated with the plaintiff. As a result of this, an injunction proceeding (Civil No. 131-1963) was held in this Court wherein the Court issued an injunction on May 29, 1963, against the officers and those cooperating with the Unity Party from using the name "St. John Democratic Club" or the use of the word "Democratic" in connection with any further activities.

The next step in the conspiracy was the filing by the Unity Party of the nomination of twenty-two candidates for the Territorial Committee of the Democratic Party of the Virgin Islands, which is the governing body of the party. The twenty-two candidates were Unity Party members. The primary elections were to be held on November 1, 1963. In campaigning for the primary election this

slate of twenty-two Unity Party candidates adopted the emblem of the Mortar and Pestle which had "formerly" been the emblem of the Unity Party for a long time. In the campaign, through speeches and newspaper articles, it referred to the Mortar and Pestle slate as being the Unity Party. Throughout the campaign for election as members of the Territorial Committee of the Democratic Party of the Virgin Islands, the candidate of the Unity Party (Mortar and Pestle) slate through the various news media made it clear that they held different principles from the plaintiff and that they didn't consider themselves as part of the plaintiff. They also avowed that they would take over the control of the plaintiff if elected. It is inconceivable to the Court that if they were as righteous as they say they were, they could adhere to the philosophy of the plaintiff and yet espouse different principles.

The election for the Territorial Committee of the Democratic Party of the Virgin Islands was held on November 1, 1963. As a result of the election sixteen members of the Unity Party (Mortar and Pestle) slate were elected to the Territorial Committee and six members of the plaintiff were elected. All were certified by the Supervisor of Elections. But at the first meeting, the six members of the plaintiff refused to sit at the meeting. As a result thereof the six members of the Unity Party who were defeated in the primary election took their places with the remaining sixteen members of the Unity Party to comprise the Territorial Committee of the Democratic Party of the Virgin Islands which had been wrongfully certified by the Supervisor of Elections.

The twenty-two members who were nominated by the plaintiff to the Territorial Committee of the Democratic Party of the Virgin Islands then proceeded to hold meetings and at all times thereafter considered themselves as the governing body of the Democratic Party.

At no time was there communication between the plaintiff and the Unity Party. Neither group invited the other group to join and participate in the opposing group's activities. Each group at all times considered itself a separate and distinct entity.

To further its scheme to take over the plaintiff party, the Unity Party through the wrongfully constituted Territorial Committee, drafted certain rules and procedures. Included in these rules was a provision which abolished all Democratic Clubs. Other rules were promulgated which stated that no group could form a club in the Democratic Party of the Virgin Islands, unless approved by the Territorial Committee. (Plaintiff's Exhibit Number 46, pg. 3.) This clever device would expel all members of the plaintiff from its clubs and would complete the takeover by the Unity Party of the plaintiff.

It is interesting to note that the Unity Party's official newspaper, *The Mortar and Pestle*, had a caption before the so-called dissolution of the party on May 1, 1963, which stated: "Published Weekly by The Virgin Islands Unity-Democratic Party". Since May 1, 1963, the name of the newspaper has not changed although the caption was changed to recite "Published Weekly by the Liberal Wing of The Democratic Party". (Plaintiff's Exhibits Numbers 29 and 30.) It is also interesting to note that the attacks in this newspaper upon the plaintiff and members of The Democratic Party have not subsided since the Unity Party has become "dissolved". *The Mortar and Pestle*, dated May 4, 1963, made the following comments on pages one and two:

"THE MORTAR PESTLE"
"Published by the Liberal Wing of
The Democratic Party of the Virgin Islands"
"There's Something in the Mortar Besides the Pestle"
"Volume II          Saturday, May 4, 1963          No. 1"

"POLITICAL PARTIES FILE NAMES
  OPPOSITION CONCERNED OVER UNITY'S MOVE
    THE END OF AN ERA"

"Old Guard Democrats in the Virgin Islands are facing the biggest battle of their political lives. The issue was joined on Wednesday, May 1st when over 100 electors, comprising the officers, members of the executive committee and the general membership of Unity-Democratic Party, from St. Croix and St. Thomas, filed a petition with the Supervisor of Elections requesting that the name 'The Democratic Party of the Virgin Islands' be recognized. Earlier, Old Guard Democrats had filed a petition requesting that the same name be recognized." (Omission)

"In a strategy meeting held during the week, Unity leaders decided that they would file the same name, but in the legal manner available to them under the law." (Omission)

"Thus the battle is now joined. The people of the Virgin Islands are about to witness for the first time a battle in which one faction will try to take over the leadership of a political party from another faction using legal means. This happens all over the United States and it will happen in the Virgin Islands. It happened in Puerto Rico when forces led by Governor Muñoz Marín and Mayoress Felissa Rincón staged a primary fight in which they toppled Mr. Benitez from the leadership of the Democratic Party in Puerto Rico."

"Of course, Old Guard Democrats are taking to the air every minute of the day trying to confuse the electorate, suggesting that the Unity 'failed to file' and that the Unity-Democratic Party is not recognized in the Virgin Islands. What they are not telling the people is that they are facing Unity leaders in a battle for the leadership of the Democratic Party in the Virgin Islands. Because they are confused and frightened they are trying to confuse the people and frighten them into panic. But our people will not panic."

"For years the people have been saying that Unity is the real Democratic Party of the Virgin Islands. The Old Guard leader-

ship of the Democratic Party does not follow the principles of Franklin D. Roosevelt, Harry Truman and John F. Kennedy. They are more like rock-ribbed, conservative Republicans. They can't even speak for the people of the Virgin Islands, either here or in Washington, even though they say they have credentials in Washington. Because Democratic leaders in Washington are embarrassed by some of the attitudes and positions taken by the Old Guard leadership on social and economic problems of the people of the Virgin Islands, they frequently turn to the Unity leadership for suggestions and advice when they sincerely want to take action for the progress of the people. So the thing to do is to depose the Old Guard slender leadership and give the Democratic Party in the Virgin Islands better leadership which will restore it in the image and philosophy of the liberal Democrats in America."

"Political tension here in the islands has heightened because the doors of all the political parties in the Virgin Islands are now opened to any elector. The party names which the Supervisor must now recognize under the law are: The Republican Party of the Virgin Islands; the Popular Vanguard, Inc.; The Virgin Islands Party; and the Democratic Party of the Virgin Islands. Around May 11th the Supervisor will announce these four names as the ones recognized. She will also call for electors and groups to file with her a slate of 22 candidates to comprise the territorial committee of each party. Naturally, Old Guard Democrats will file their slate of 22 names for election to the territorial committee. Unity leadership will also file a slate of 22 names."

"In order for Joe Alexander, Alex Moorhead, Ron De Lugo and the other Old Guard Democrats to be able to vote for their slate in the primary which take place on November 1st, they must enroll before September 20th as Democrats with the Board of Elections. Our side will also enroll as Democrats so that we can participate in the same primary and vote for our slate. Here is where the battle is. Electors will be able to vote for four in the district and twelve at large. The group which elects the majority on the territorial committee will naturally control the Party. After the territorial committee is organized it will elect a national democratic committeeman and a national democratic committeewoman. This is what has the Old Guard leadership scared, even though De Lugo boasts that he has credentials with the National Democratic Committee up until 1964."

599

Further damaging admissions that the Unity Party still remained in existence after May 1, 1963, is plaintiff's exhibit number 6. This exhibit consists of two checks drawn on the Chase Manhattan Bank by Warren E. Brown and Elmo D. Roebuck. The dates of the checks are October 2, 1963, and October 13, 1963. On the checks in handwriting are the words "Virgin Islands Unity Democratic". The ledger sheets from the Chase Manhattan Bank, plaintiff's exhibit number 5, shows checks drawn on the account of the Virgin Islands Unity Party from the date of "dissolution", May 1, 1963, until October 18, 1963. An additional fact is that the Unity Party kept its name listed in the local telephone directory and kept the phone operating until the fall of 1963.

The Court finds from all of the evidence that the Unity Party did not dissolve on May 1, 1963, but that it has just assumed the name of the Democratic Party of the Virgin Islands. The Court further finds that the philosophy and principles of the Unity Party is so irreconcilable with that of the Democratic Party that it is inconceivable that those Unity Party members and officers could in good conscience in a matter of a few days embrace the principles and philosophy of the Democratic Party.

> "Examination may not be made into the hearts and minds of people to ascertain their thoughts and sympathies. Deceit often indicates that words do not truly disclose true thoughts and sentiments. But actions often belie words. In this case, it is more the actions of the respondents rather than their words which indicate their true political sympathies."[1]

All of the foregoing circumstances can lead to only one conclusion. That conclusion is the Unity Party through a fraudulent, collusive and conspiratorial scheme attempted and was successful in taking over the Democratic Party of the Virgin Islands.

The Court has done considerable research on the ques-

[1] Werbel v. Gernstein, 191 Misc. 275, 78 N.Y.S.2d 440, 443.

tions of law in this case and cannot find a single case in the United States that closely resembles the facts and law that is involved herein. The Court did, however, find five cases which were decided by the New York State Courts which are most interesting. These cases were decided pursuant to a New York Election Law and thus not controlling upon this Court, but the rationale of the cases are most impressive and persuasive.

In Re Mendelsohn, 197 Misc. 993, 99 N.Y.S.2d 438, was a suit brought under New York Election Law to cancel the enrollment of a member of the Democratic Party on the ground that the member was not in sympathy with the principles of the Democratic Party. The Court, in this case, directed the respondent's enrollment to be cancelled. The respondent was an attorney who enrolled as a member of the Democratic Party in 1949. Prior to 1949, he had been enrolled as a member of the Liberal Party and was a candidate for Assembly in 1948 and 1946. In 1949 he had been a member of the Executive Committee of the Liberal Party. When he enrolled as a Democrat, he had not resigned from the Executive Committee of the Liberal Party. The Court found that the reason the respondent desired to join the Democratic Party was to obtain the Democratic nomination for the Assembly in his particular district. This was done to circumvent the Wilson-Pakula Law. The Court further found that the respondent tried to induce members of the Liberal Party to join the Democratic Party with him. The Court finally held from all of the evidence that the respondent was not in sympathy with the principles of the Democratic Party and stated: "To hold otherwise would be to ignore the realities and would be repugnant to common sense". [pg. 445] The Court in viewing the evidence stated on page 444: "One may not arrive at the conclusion that the respondent is not in sympathy with the principles of the Democratic Party merely because of these acts taken separately, but these

acts must be considered in the light of what the respondent said and did at or about the time he enrolled as a Democrat in 1949." The Court went on further to state on page 445: "But where, as I think it has been conclusively shown here, a man is not in reality in sympathy with the principles of a party, he is not entitled to enroll in order to further his ulterior motives."

The case of Werbel v. Gernstein, 191 Misc. 275, 78 N.Y.S.2d 440, is a case similar to In Re Mendelsohn. In that case, an action was brought to cancel the enrollment of certain members of the Democratic Party because they too were not in sympathy with the principles of the Democratic Party. The Court in that case discussed the Wilson-Pakula Law and stated that its purpose was to protect the integrity of political parties and to prevent the invasion into or the capture of control of political parties by persons not in sympathy with the principles of such parties. This case made some profound comments as to the political parties' philosophies and the need for having political parties in the United States. In this case members of the American Labor Party attempted to gain control of the Democratic Party by enrolling in the Democratic Party. The Court on page 443 stated: "The actions of the respondents considered alone may not have a sinister appearance but when considered with the actions of others, the enterprise in which all were engaged and the achievement sought leads to the inevitable conclusion that there existed a common plan and scheme by the members of the American Labor Party to capture and control the local 24th Assembly District Democratic Party organization." The Court held that certain enrollees in the Democratic Party were to have their memberships cancelled.

The third case, Zuckman v. Donahue, 80 N.Y.S.2d 698, was also a case in which enrollment by members in the American Labor Party was sought to be cancelled because

they were not in sympathy with the principles of that party. The essence of the charge brought against them was that their enrollment and their subsequent political activities were part of a prearranged plan to seize control of the American Labor Party. The evidence from that case, although circumstantial, clearly indicated that most of the appellants attempted to seize control of the American Labor Party for ulterior motives. The great majority of the appellants were formerly Democrats who joined the American Labor Party in 1946 and 1947. Many of the appellants immediately became candidates for party positions. The Court held that not one of the many facts was controlling, but that the combination of all the factors involved showed that the appellants were unmistakably out of sympathy with the purposes of the party and that their enrollment in the party was prompted by ulterior motives. The Court again in this case cancelled the enrollment of many of the appellants.

Two additional cases which the Court shall only cite, but will not elaborate upon are Ingersoll v. Heffernan, 188 Misc. 1047, 71 N.Y.S.2d 687, and In Re Newkirk, 144 Misc. 765, 259 N.Y. Supp. 434.

▉▉ As previously stated these cases are only persuasive. They show, with the aid of a statute, that when there is an attempt through devious means to take over the machinery of a political party for ulterior motives, there is recourse in a court of law. In the case which is presently before the court, the plaintiffs have alleged and have proven fraud. This Court sitting, in essence, as a Court of Equity must take all steps necessary to rectify any wrong which the defendants have committed through fraudulent means.

As was stated in the case State ex rel. LaFollette v. Kohler 200 Wis. 518, 228 N.W. 895, 69 A.L.R. 348, 366: "If the election is void and the candidate has intruded into the office, it is clear that he had no right thereto, and a

judgment of ouster excluding him from office and declaring it vacant is merely a summary and expeditious method of removing him therefrom. He does not by misconduct forfeit an office once lawfully acquired. He never secures title to it. It does not shorten his term, because he was never elected. It terminates the term of his intrusion into the office."

■ The Court holds a similar viewpoint as that expressed in the Kohler case (supra), that a person does not have title to an elected office, especially an office obtained through fraud, collusion, and conspiracy. This leads the Court to the ultimate conclusion that the sixteen members of the Unity Party (Mortar and Pestle) slate who were elected to the Territorial Committee shall be enjoined from acting or exercising any authority in the government of the Democratic Party of the Virgin Islands, the plaintiff herein. Further, the six persons elected to the Territorial Committee to fill the vacancy caused by the refusal of the six members of the plaintiff slate so elected and who refused to serve with the sixteen members of the Unity Party shall be similarly enjoined from acting or exercising any authority in the government of the plaintiff.

■ ■ The officers, executive committee members and members of the Unity Party are further enjoined from representing themselves to the public as members of the Territorial Committee of the Democratic Party of the Virgin Islands. Further, any actions taken by and any rules or procedures passed by the Territorial Committee of the Democratic Party of the Virgin Islands under the leadership of the Unity Party are declared null and void and not binding upon the Democratic Party of the Virgin Islands, the plaintiff herein.

■ The decision in Alexander v. Todman, Civil No. 158-1963 (4 V.I. 580), held that the Supervisor of Elections

604

shall certify the Territorial Committee as nominated by the plaintiff herein as the only valid Territorial Committee of the Democratic Party of the Virgin Islands and this shall be the holding in this case.