In the Matter of LEWIS J. YEVOLI et al., Respondents, *v.* MARVIN D. CRISTENFELD, as Chairman of the Nassau Democratic County Committee, et al., Appellants, and JOSEPH M. MARGIOTTA, as Chairman of the Nassau Republican County Committee, et al., Intervenors-Appellants.

Second Department, June 30, 1971.

*Henry W. Schober* for appellants.

*George C. Pratt* for intervenors-appellants.

*Zinman & Chetkof* (*Eugene J. McMahon, Louis Orfan* and *Aaron Britvan* of counsel), for respondents.

BENJAMIN, J.   The Democratic County Committee of Nassau County has adopted a rule[1] that no person may receive its designation or nomination for political office other than judicial unless he signs an agreement to refuse the designation or nomination of any other party or independent body.   The Nassau County Republican Committee has adopted a similar rule.   Several members of the Democratic County Committee brought this proceeding pursuant to article 78 of the CPLR for a judgment declaring that the Democratic County Committee's rule is invalid.   The Republican County Committee intervened in the proceeding and consented that the validity of its rule be adjudicated therein.   Special Term has held that an article 78 proceeding was not an appropriate procedure for determination of the issue; it deemed the proceeding an action for a declaratory judgment, as permitted by CPLR 103, and considered the application as a motion for summary judgment in the proceeding; and on the merits it adjudged the subject rules invalid.   The county committees and certain officers thereof have appealed.

We agree with Special Term's determination that this article 78 proceeding be deemed an action for a declaratory judgment and be considered on the merits in that form.

---

1. The rule reads: " Designations or nominations shall be made only to persons who shall have agreed in writing, duly acknowledged, to refuse to accept the designation or nomination of any other political party or independent party or body; except that a candidate nominated for the Judiciary may accept a Republican nomination ".

With respect to the merits, we also agree with its conclusion that the subject rules are invalid. Subdivision 2 of section 15 of the Election Law requires that a party committee's rules be "consistent" with the Election Law. In our opinion the subject rules do not meet that requirement.

Subdivision 4 of section 137 authorizes a party committee to permit the nomination of one not a member of that party; and section 248 clearly contemplates multi-party nominations of a single candidate. It seems obvious, then, that the general policy of the Election Law is to permit multi-party nominations. The subject rules, viewed pragmatically and in light of all the circumstances of the case (see *Matter of Battista* v. *Power,* 16 N Y 2d 198, 201; *Matter of Crane* v. *Voorhis,* 257 N. Y. 298, 301), forbid such cross-nominations and thus are inconsistent with the Election Law in that respect.[2]

More important, they contravene the basic philosophy of our democratic system, which forbids such undue impairment of the franchise. "The underlying principle regarding the franchise and the inviolable rights of an elector under the State Constitution was stated in these words: ' The whole purpose of the Election Law and of the Constitution under which it is enacted, is that, within reasonable bounds and regulations, all voters shall, so far as the law provides, have equal, easy and unrestricted opportunities to declare their choice for each office ' " (*Matter of Crane* v. *Voorhis, supra,* p. 301). In line with this fundamental principle, in *Matter of Callahan* (200 N. Y. 59) the court held unconstitutional a statute forbidding a party committee to nominate a candidate of another party for the same office. So holding, it noted that electors have the right to vote "for whom they will" (p. 61); that an arbitrary exclusion from candidacy was as bad as an arbitrary exclusion from office, and a prohibition against one party nominating another's candidate was such an arbitrary exclusion from candidacy; and that the subject statute could not be deemed valid merely because the party convention could nominate another party's candidate, despite the prohibition against such nomination by the party committee, since legislation may not discriminate in favor of one candidate against another. Similarly, in *Matter of Hopper* v. *Britt* (203

2. The provisions of subdivision 4 of section 137 of the Election Law, relied on in the dissenting opinion herein, against a filing in a party primary by a person not enrolled in that party, without the consent of that party, are designed to prevent the monopoly of the voting machine by a single dominant party raiding primaries of weaker parties. Its purpose, therefore, is likewise to ensure the fullest opportunity for the expression of the will of the voters and to prevent the restriction of such complete opportunities by such raids.

N. Y. 144) the court invalidated a statute which provided that a multi-party nominee could have his name printed only once on the ballot. So holding, the court said that every elector must have "the right to cast his vote with equal facility to that afforded to other voters * * * [and] without unnecessary discrimination against him as to the manner of casting his vote" (p. 151; word in brackets supplied); and it clarified this holding by noting the contention that the statute improperly restricted such multi-party candidate's "straight vote" to only one line and required a voter of the other party that had nominated him to abandon his "straight-line" vote and seek out his name on another line.

We believe that what the Legislature may not do a party committee may not do, since it is merely a part of the election machinery authorized by the Legislature. If it is unconstitutional for the Legislature to prohibit a multi-party candidacy, it certainly is unconstitutional for party committees to seek that same result by the devious device of rules like those at bar. We may note, at this point, that these rules are aimed not at the vice of multiple independent lines for a major party candidate who seeks thereby to pre-empt the ballot or machine, but rather at the democratic process whereby several parties, each alone too weak, can join forces to elect the candidate they all desire.

The practical effect of the subject rules would be to do what neither the Legislature nor a party committee may do — namely, prohibit multi-party candidacies in Nassau County. It has been urged that designation by the county committee is unimportant, for the reason that one who fails to get that designation because of refusal to sign the agreement not to accept another party's designation can still run in the primary as an insurgent. Clearly, there is no force in that contention; on the contrary, considered pragmatically, the failure to get the county committee's designation is of critical importance.

In light of these facts, the subject rules unfairly discriminate against voters enrolled in the Liberal and Conservative Parties and those affiliated with independent bodies as well; and they may even be unfair to the voters enrolled in the major parties. The effect of these rules is to impair the other parties' members' right freely to vote for their preferred candidates because (a) the majority party designee must sign the agreement required by the subject rules or take the overwhelming risk of losing the nomination in the primary and probably also the risk of losing his party's active support in the election even if he wins the primary; (b) if the minority party (or even the other majority

party) nominates the first party's designee, he must decline that other party's nomination or face political ostracism and probably also the loss of his own party's support in the election — a risk which few would dare to take; (c) the minority party (or other major party) must then either nominate no one for that post or else nominate another man and thus drastically impair the chances for election of its own first choice (namely, the first party's nominee whom it really preferred); and (d) if the minority party (or other major party) nominates no one for that post, the voters of that minority party (or the other major party) would be unable to include their first choice for that post (the first party's nominee) in a "straight vote", but would have to switch over at that point on the ballot or machine to cast a vote for him, and this would constitute improper impairment of their right to nondiscriminatory, equal facility in voting their choices (see *Matter of Callahan*, 200 N. Y. 59, *supra*; *Matter of Hopper* v. *Britt*, 203 N. Y. 144, *supra*; *Matter of Crane* v. *Voorhis*, 257 N. Y. 298, *supra*).

In sum, we rest our holding not alone on the language of the laws but as well on the broad grounds of public policy express and implicit therein. In a democracy, the people must have the right freely and fairly to choose those who will govern them. The implementation of that principle is the prime purpose contemplated by the Election Law as well as by our historical system of political parties, whose organization and operation are to that end controlled by the provisions of that statute. These parties are not, and may not be, operated like private clubs. They rather are integral parts of our democratic system of government, with their governing committees and leaders acting as trustees of their voters' rights and interest in the furtherance of the democratic process. What was here done runs afoul of these principles.

We therefore hold these rules unconstitutional and affirm the judgment of Special Term, without costs.

LATHAM and SHAPIRO, JJ. (dissenting). We believe that the county committee rules here under consideration are valid and we therefore dissent.

We agree that subdivision 2 of section 15 of the Election Law requires a party's committee rules to be "consistent" with the Election Law, but, differing from the majority view, we are of the opinion that the rules are completely consistent with and do not violate any express provisions of that law or "the general policy" of subdivision 4 of section 137 and section 248 of the Election Law.

The majority, in a sweeping generalization, determines that the rules contravene the basic philosophy of our democratic system and concludes: "we rest our holding not alone on the language of the laws but as well on the broad grounds of public policy express and implicit therein." We fail to find any such applicable laws nor any implied or expressed public policy which is in any way violated by the adopted rules. On the contrary, we believe that a fair reading of all of the provisions of the Election Law compels the conclusion that courts have no right or business to become enmeshed in the internal workings of our political parties.

Since we differ with the majority on that basic point, we analyze the governing statutes noting at the outset that, except in special elections and in the filling of vacancies, the county committee does *not* nominate the candidates of its party. What it does do is indorse, i.e., recommend, a potential candidate to the enrolled voters of its party. That candidate must then seek his party's nomination in its primary election.

Subdivisions 1, 2 and 3 of section 137 of the Election Law enunciate the general rule that persons may not be candidates of a political party in which they are not enrolled. Subdivision 4 contains the exception that nonparty members may be indorsed or designated as candidates by a majority of a committee.

Section 248 merely sets forth the makeup of the ballot if a candidate receives the nomination of more than one party. Significantly, the provision of that statute that the name of a person nominated for office solely by one or more independent bodies shall only appear once on the voting machine has been upheld on the ground that it did not make it impossible for members of a group to vote as such (*Matter of Battista* v. *Power*, 16 N Y 2d 198, 201). Nothing in either of the rules here under consideration *prohibits* multi-party indorsements. A potential candidate who is of the view that he wants or needs the indorsement of another political party may, despite the rules, enter his own party's primary and accept another party's indorsement.

To us it seems that the majority of the court has fallen into error because its determination is posited on its conclusion that "what the Legislature may not do a party committee may not do, since it is merely a part of the election machinery authorized by the Legislature." But *Matter of Callahan* (200 N. Y. 59), which the majority apparently deems authority for that statement, does not stand for any such proposition; indeed it would seem to hold the opposite. In that case the Court of Appeals decided that *the Legislature* could not limit the power of a politi-

cal committee to indorse any candidate it chose, thus necessarily holding that, at least in that regard, the power of the political committee exceeded that of the Legislature. The fact that the Legislature could not constitutionally fetter the county committee in the latter's choice of its candidates, which *Matter of Callahan* stands for, is a far cry from the holding of the majority that the committees here could not *voluntarily* impose upon themselves a restriction which, if enacted by the Legislature, would be invalid, for, as the intervenors properly state in their brief, "there is a wide constitutional gulf between (a) the Legislature's power to prohibit action by a group and (b) that group's right to voluntarily refrain from the same action."

Perhaps the best way to indicate that the majority of the court errs in its view that *Matter of Callahan* decided that what the Legislature may not do the county committees may not do, is to cite portions of the opinion in that case. Speaking for the majority, Chief Judge CULLEN said (p. 61): "if the legislature does grant to any convention, committee or body the right to make nominations, it cannot limit the right of such convention, committee or body to nominate as its candidate any person who is qualified for the office."

Chief Judge CULLEN further said (p. 62):

"*The liberty of the electors* in the exercise of the right vested in them by the Constitution *to choose public officers on whatever principle or dictated by whatever motive they see fit,* unless those motives contravene common morality and are, therefore, criminal, such as bribery, violence, intimidation or fraud, *cannot be denied*" (emphasis supplied).

Thus, in our opinion, *Matter of Callahan* negates the contention of the majority that the power of the Legislature and a political committee created by it are circumscribed by the same limitations.

To us it seems clear that the object of the rules adopted by the respective county committees is to encourage the continuance of a true two-party system and to preserve their own political integrity. We see no reason why that may not be done. To point up the issue more clearly, we may consider the Conservative and Liberal Parties, the views of which, on basic issues, are known to be antithetical. That being the case, would it be improper for the county committee of the Liberal Party to adopt a rule that no candidate which it indorses could accept the indorsement of the Conservative Party or for the Conservative Party to adopt a similar rule with respect to the Liberal Party? Can it be sensibly contended that a political party may not thus preserve

its own integrity? To us, in the minority, the answer seems obvious, and that is all that the respective county committee rules here seek to do. In this connection, it should be repeated for emphasis that neither rule prevents any person, otherwise qualified, from filing a designating petition and becoming a candidate in the primary election for his party's nomination; nor do they limit the right of any recognized political party, or independent group, to nominate or designate anyone they choose; nor does either rule prevent a write-in vote in the primary election. All the rules seek to do is to regulate county committee indorsements of party members on a basis which is not prohibited by any statute. The court should not by judicial legislation meddle in the intra-party management of a political party in the guise of permitting the people, as stated in the majority opinion, to " have the right freely and fairly to choose those who will govern them,"—a right which these rules in no way infringe upon.

The rules establish, *in advance,* a standard for action by each party committee. By so doing they publicly advise their enrolled party members, who, with the exception heretofore noted, are the only ones who can run legally in their primaries (Election Law, § 137), that they will refuse to give their blessing to any proposed candidate who refuses to sign a statement that he will forego acceptance of any other party's indorsement. To us it seems quite plain that a majority of the members of each of the county committees could, in the case of each individual indorsement, *and on a case by case basis,* insist upon the same declaration which is now contained in its rules; and, if it could do so in each individual case, we see no reason why it cannot with equal validity accomplish the same purpose by a general all-embracing rule.

The constitutional validity of section 137 of the Election Law, popularly known as the Wilson-Pakula Law, which prohibits candidates from running in the primary of a party in which they are not enrolled, without the consent of the appropriate committee of that party, was upheld in the two *Ingersoll* cases (*Matter of Ingersoll* v. *Curran,* 188 Misc. 1003, affd. 297 N. Y. 522; *Matter of Ingersoll* v. *Heffernan,* 188 Misc. 1047, affd. 297 N. Y. 524). In the *Curran* case, the Special Term said (pp. 1006-1007) : " the enrolled voter of any political party who desires to have as his nominee a person who is not an enrolled member thereof can do so by the simple expedient which is still reserved by the Election Law of writing in such person's name upon the primary ballot at the primary election.   *   *   *   Whether the required number of the qualified enrolled voters of a party are sufficiently

interested to do so or not, is not, in my judgment, a test of the constitutionality of the statute involved. The test is that there is preserved unimpaired for every qualified enrolled voter of any political party the right at the primary election to vote for any person of his choice for a party nomination regardless of whether such person is an enrolled member of his party or not.''

In that same case, the court said that the Wilson-Pakula Law '' does not restrain freedom in nominating condidates at the primary '' (p. 1008); and in the *Heffernan* case the Special Term made the point that participation in primary elections is not a matter of absolute right and that a primary election is a party function which becomes available for use only through the medium of a political organization. Quite pertinent to the issue here is the statement in *Heffernan* (p. 1052) that: '' Its enactment [the Wilson-Pakula Law] is consistent with the legislative policy as expressed in prior statutes throughout the years. *There is no impairment in the exercise of the elective franchise or any deprivation of the petitioner's right to be a candidate for public office. He is qualified to be a candidate of his own party; he may seek and secure independent nominations. There is, however, no constitutional provision guaranteeing to him the right to be the candidate of a party to the objectives and purposes of which he is opposed* '' (emphasis supplied).

Paraphrasing what the court there said, we see no reason why a concededly partisan political party may not insist that its designee promise not to dilute its principles by accepting the designation of another political party which has different and opposing principles.

Since each county committee, in the management of its own political party affairs, came to the conclusion, expressed by its rule, that its integrity as a political party required it to demand a pledge of support of its principles by potential candidates, evidenced by their agreement to renounce indorsement of another political party presumably having a different basic philosophy, and since there is nothing arbitrary or unreasonable in so doing, and since the rules are not '' tantamount to a restraint upon freedom in voting '' (*Matter of Ingersoll* v. *Heffernan,* 188 Misc. 1047, 1051, *supra*), and as the rules do not deprive any enrolled party member of the right to be a candidate in the primary election of his party, the petitioners are not entitled to a declaration that the county committee rules are invalid. On the contrary, and since this article 78 proceeding is now deemed to be an action for a declaratory judgment, we conclude that the judgment appealed from should be reversed and that a judgment

should issue declaring the rules to be constitutionally valid (cf. *Lanza* v. *Wagner*, 11 N Y 2d 317; Eager, The Declaratory Judgment Action, § 92).

HOPKINS, Acting P. J., and BRENNAN, J., concur with BENJAMIN, J.; LATHAM and SHAPIRO, JJ., dissent and vote to reverse the judgment and to declare the provisions in the rules in question valid, with a joint opinion.

Judgment affirmed, without costs.